James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

James A. Plaisted
Lin C. Solomon
WALDER, HAYDEN & BROGAN, P.A.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 992-5300

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BOBBIE JAMES, CRYSTAL GIBSON, BETTY KING, BARBARA SKLADANY, MARK SKLADANY, MILAN SKLADANY, and DR. JOHN F. CROW, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs<br>  v.<br><br>GLOBAL TEL*LINK CORPORATION, INMATE TELEPHONE SERVICE, and DSI-ITI LLC,<br><br>  Defendants. | Civil Action No.:<br><br><br><br>**COMPLAINT and<br>DEMAND FOR JURY TRIAL** |

Plaintiffs Bobbie James, Crystal Gibson, Betty King, Barbara Skladany, Milan Skladany, and Dr. John F. Crow by way of Complaint against Defendants Global Tel*Link Corporation, Inmate Telephone Service, and DSI-ITI, LLC, say:

## NATURE OF THE ACTION

1.     This is a consumer class action for violations of federal law and New Jersey state law arising from (a) Defendants' abuse of their monopoly power over phone calls made from New Jersey by prisoners by charging rates, more than 100 times higher than market rates; (b) Defendant's abusive, discriminatory and unreasonable phone charges whereby Defendants

permit New Jersey prisoners to make collect calls but only to family, friends and lawyers who open credit/debit accounts and who customarily are required to make substantial advance payments to Defendants from which charges of as much as 20% of the deposit are siphoned off at opening and again at closing of the accounts as "administrative costs"; (c) Defendants' failure to fully and adequately disclose to their customers charges that they will incur in connection with their use of Defendants' telephone service and the rates that will be charged for calls made using Defendant telephone service; (d) Defendants' failure to disclose to their customers certain practices followed by Defendants in connection with their telephone service that adversely affect their customers' accounts; (e) Defendants' practices of forfeiting balances in accounts when the account is not used for 90 days after that Defendants require that the accounts be opened with minimum payments of $25, $50 or $100.

2.      Defendants' wrongful conduct involves relatively small amounts of damages for each class member and Defendants are carrying out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.  Plaintiffs bring this action in their own right and on behalf of all other persons similarly situated.

## JURISDICTION AND VENUE

3.      Jurisdiction is proper in this Court by 28 U.S.C. 1332(d) because the amount in controversy exceeds $5 million, exclusive of interest and costs, and at least one class member is a citizen of a state other than that of a defendant.  Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331 because this matter involves federal questions whether there are violations of 47 U.S.C. § 201 *et seq.* and 42 U.S.C. § 1983 and the Court has supplemental jurisdiction over Plaintiffs' state law claims because they arise from a common nucleus of

operative facts and are such that Plaintiffs ordinarily would expect to try them in one judicial proceeding.

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) in that all Defendants transact substantial business within, and are subject to personal jurisdiction, in this judicial District and thus "reside" in this District and because a substantial part of the events giving rise to the claims asserted herein took place in this judicial District.

## PARTIES

6.     Plaintiff Bobbie James is, and at the times relevant to the claims alleged herein was, a citizen of the State of New Jersey and resides in Newark, New Jersey.

7.     Plaintiff Crystal Gibson is, and at the times relevant to the claims alleged herein was, a citizen of the State of New Jersey and resides in Newark, New Jersey.

8.     Betty King is, and at the times relevant to the claims alleged herein was, a citizen of the State of New Jersey and resides in East Orange, New Jersey.

9.     Plaintiff Barbara Skladany is, and at all times relevant to the claims alleged herein was, a citizen of the State of New York, residing in New York, New York.

10.     Plaintiff Mark Skladany is, and at the times relevant to the claims alleged herein was, a citizen of the State of New Jersey and was housed in New Jersey correctional facilities, in the Somerset County Jail during the period  approximately September 2010  to September 2012 and then thereafter in the New Jersey State Prison at Yardville, New Jersey.

11.     Plaintiff Milan Skladany is, and at all times relevant to the claims alleged herein was, a resident in the State of New Jersey until approximately 2011 when he returned to the Slovak Republic where he is a citizen.

12.     Plaintiff Dr. John F. Crow is, and at all times relevant to the claims alleged herein was, a citizen of the State of New York, residing in New York, New York.

13.     As used herein, "Plaintiffs" shall mean and refer to all Plaintiffs identified in ¶6 to ¶12, together.

14.     Defendant GTL is, and at all times relevant hereto was, a privately held Delaware corporation with it principal place of business located in Mobile, Alabama.

15.     Defendant ITS is a wholly owned subsidiary of GTL and a Delaware corporation with its principal place of business in Mobile, Alabama.

16.     Defendant DSI-ITI is a Delaware limited liability company and, upon information and belief, is the successor-in-interest to ITS.   Upon information and belief, GTL is the sole owner and member of DSI, and DSI-ITI assumed all of ITS' existing contracts as of June 10, 2010.

12.     Defendants provide managed telecommunications services at state and local correctional facilities in New Jersey and elsewhere in the United States so inmates can communicate with family members, friends, attorneys and other approved persons outside the correctional facilities.

## DEFENDANTS' UNFAIR, UNCONSCIONABLE AND DECEPTIVE BUSINESS PRACTICES

13.     AT&T bid and won a New Jersey contract in 2002 to provide all telecommunications services to inmates in the State of New Jersey's correctional facilities.

14.     AT&T sold the New Jersey contract rights to be the sole telecommunications provider for New Jersey inmates to GTL in 2002.

15.     Plaintiffs presently do not have information with respect to the arrangements between GTL, ITS and/or DSI-ITI as to which entity customers purportedly deal with and which

entity purportedly provides what service to customers.  However, regardless of which entity does what, GTL, ITS and DSI-ITI have operated as a single economic unit with respect to the telephone services described herein.

16.    Defendants have the sole right to provide telecommunications services which enable incarcerated persons to communicate by telephone with family members, friends and other persons outside certain New Jersey state and county prison and detainee facilities.

17.    Defendants remit to the State approximately 40% of the rates charged for the right to have a monopoly over phone services at certain State prisons and detainee facilities.

18.    Defendants ITS and DSI-ITI remit 50% or more to Essex, Monmouth, Bergen, Hudson, among other counties, for the rights to have a monopoly over phone services provided by those county prisons and detainee facilities.

19.    According to publicly available information, the State of New Jersey alone receives $4.42 million per year as its percentage of revenue pursuant to its contract with GTL. Based upon that figure, upon information and belief, the percentages paid to the various counties should be greater.  Further, this information would indicate that Defendants' total revenue from calls placed from New Jersey detention facilities would be in tens of millions of dollars per year.

20.    Defendant GTL has used the existing contract with the State of New Jersey as a basis for its subsidiary ITS and DSI-ITI to enter similar agreements with many County prison facilities such as Essex, Hudson, Monmouth and Bergen Counties among others.

21.    As a result of the foregoing contracts, since 2002, Defendants have been the sole telecommunications provider for persons held in certain New Jersey State prison or detention facilities to communicate by telephone with family members, friends and other persons.

22.     Because of the exclusive provider position and the literally captive market, Defendants are able to exploit customers by charging them unconscionably excessive rates for calls, as well as unconscionable and undisclosed fees and connection charges, without regard to what other providers of prepaid calling services are charging in the marketplace.

23.     Upon information and belief, Defendants purchase their minutes for calls terminating within the United States for less than 3/10 of a penny per-minute, and Defendants often resell the minutes it buys at more than 100 times their cost to Plaintiffs and other Class Members.

24.     The market rate for competitively priced prepaid calling cards is approximately 1¢ to 2¢ per minute for calls within the United States. Depending upon the country being called, the rates for international calls can be as low as 1¢ per minute.  Defendants, however, charge approximately 30¢ per minute for calls within the United States.  Defendants likewise charge exorbitant rates for international calls.

25.     The vast majority of Defendants' customers establish their accounts over the phone.  When a prisoner wishes to call someone outside the detention facility, they must place a collect call to that person.  However, rather than an operator asking the called person whether they will accept the charges for the call, a series of prompts routes the called person whereby the called person is informed they must set up an account with Defendants in order to accept the call. The same automated procedures are followed when customers seek to open an account by calling the Defendants' 800 number provided at the prison facility to customers.

26.     Using standardized scripts and prompts, the Defendants' system sets up an account for the customer or called person using a credit or debit card provided by the customer. These accounts must be set up in amounts of $25, $50, or $100.  After the account is set up, the

called person is then provided with a PIN so he or she may accept calls from the prisoner in the future and charges for all calls are deducted from the called persons' account.

27.     Customers are told by Defendants that no information on rates and charges are available until they have an account number.

28.     Customers of Defendants are not provided a written contract when they establish an advance pay account with Defendants by telephone, nor are they advised of any of the terms and conditions applicable to their account.

29.     Defendants do not issue account statements in writing or electronically to customers in the ordinary course of business.  When making or receiving a call, the customer is given a voice prompt advising the customer how much money is left in their account, but a customer cannot obtain an itemized statement of charges to their account, nor can the customer determine how many minutes of calling time they have left because Defendants do not disclose rates and applicable charges.

30.     Defendants fail to inform their customers that they will be charged a service or set-up fee which will be deducted from their advance pay balance, when an account is first established.

31.     Defendants charges an unconscionable service fee of approximately 20% of the deposit, *i.e.* $4.75 out of the first $25.00 deposit, $9.50 out of the first $50.00 deposit, and $19.00 out of the first $100.00 deposit, when an account is first established, and whenever an account is recharged.  In essence, Defendants charge their customers for the ability to pay for Defendants' services.

32.     Defendants fail to inform their customers when an account is first established that they will be charged fees (a per-call transaction or connection fee) for each call placed in addition to the call rates per minute.

33.     Defendants charge upwards of $1.75 per call as a connection or transaction fee.

34.     Defendants charge a $5.00 fee to close an account and obtain a refund of any remaining balance.  However, Defendants fail to inform their customers when an account is first established that they will be charged this additional service fee to close the account.

35.     Defendants fail to inform their customers when an account is first established that their account balances will be forfeited if they do not use Defendants' service for a 90-day period.

36.     Defendants fail to inform their customers when an account is first established that a monthly inactivity fee will be charged against their account for any months when it is not used.

37.     Because customers must purchase calling time in multiples of $25, $50, or $100 and must establish an account in advance of paying for calls, it is inevitable that customers will not use the exact amount of money in their account.  As a result, every customer will incur either the $5.00 fee to close their account or will forfeit their account as a result of it being inactive for 90 days.

38.     Defendants also fail to advise customers that the customers' account may be frozen if Defendants deem the amount remaining in the account to be too little to accept calls from an inmate.  In order to unfreeze the account so he or she can receive calls, the customer must recharge his or her account, while incurring service charges of 20% of the amount deposited in doing so.

## PLAINTIFFS' EXPERIENCE WITH DEFENDANT

39.     Each of the Plaintiffs set up their accounts in accordance with the procedures set forth above.  Defendants did not disclose to any of the Plaintiffs the rates applicable to their calls, nor did they disclose any of the fees and other charges applicable to their accounts, as described above.

40.     Plaintiff Bobbie James became a customer of Defendants in approximately April 2011 in order to communicate with her grandson in Essex County Jail.  She had helped raise and support her grandson prior to his incarceration and established the advance pay account with GTL in order to continue to communicate with him.

41.     Ms. James often deposited $25 into her accounts which permitted her to speak with one of her grandsons approximately three times a week approximately 15 minutes total calling time.  The remainder of the $25 deposit is eaten up by fees and charges.

42.     Plaintiff Crystal Gibson became a customer of GTL in approximately September of 2010 when her significant other was incarcerated in the Essex County Jail in New Jersey.

43.     Defendants charged Ms. Gibson a cancellation or closure fee in order for her to get a refund of the balance in her account.

44.     Defendants also charged Ms. Gibson an inactivity fee of approximately $1.49 per month when her account was not used.

45.     Defendants' representative told Ms. Gibson that Defendants were charging her an extra and additional fee for establishing an account because she used a live operator and did not follow the scripted automated system when she first set up her account.

46.     Betty King is a senior citizen who opened an account with Defendants to receive phone calls from her brother who is an inmate at the East Jersey State Prison in Rahway, Middlesex County, New Jersey.

47.     Mrs. King has never spoken with a representative of Defendants but has signed up as a customer through Defendants automated phone system.

48.     From at least 2002 Mrs. King has deposited hundreds of dollars into her account and her brother calls her regularly.

49.     Mrs. King normally deposits either $25 or $50 into the Defendants account.

50.     Defendants have never provided Mrs. King with any statement of her account.

51.     Defendants have never informed Mrs. King of the fees, rates and other charges which are imposed on her for using the prepaid service.

52.     Plaintiff Barbara Skladany became a customer of GTL in or about 2010, when she established an advance pay account with GTL in order to communicate by telephone with her son, Mark Skladany, who was incarcerated in the Somerset County Jail.   During the period of Mark's incarceration, Barbara Skladany has made deposits of many hundreds of dollars into her accounts with Defendants.

53.     Plaintiff Milan Skladany, who was then a resident of Somerset County, became a customer of GTL in and around 2010 when he established an advance pay account with GTL in order to communicate with his son, Mark Skladany, who was incarcerated in the Somerset County Jail.

54.     Plaintiff Mark Skladany deposited money in a pay phone account from his resources available while he was in prison to fund advance pay accounts for him to make calls from prison to his parents, lawyers, relatives and friends.

55.     During that time, Ms. Skladany has had to pay service fees to open and recharge her account and connection fees with respect to calls received from her son, Mark, as described above.

56.     Mark Skladany was moved to different institutions at various times in 2011 and 2012.  As a result of a move, Ms. Skladany's existing account was no longer valid to receive calls from Mark, so she had to set up another account.  In doing so, she incurred additional service fees, as well as a $5 charge to close her prior account and receive a refund of the amounts remaining in her old account.

57.     At various times during the time that Ms. Skladany has maintained an account for Mark with the Defendants, the Defendants have frozen her account pending verification of calls made by Mark and required additional prepayments even before the advance pay balance was depleted in order to continue to receive telephone calls from Mark.

58.     Despite many requests, Defendants refused to provide Barbara Skladany and Milan Skladany with written statements of their accounts identifying charges and rates.

59.     Dr. Crow became a customer of GTL when he established an advance pay account in April 2013 in order to communicate by telephone with his son who was incarcerated in the Mercer County Correctional Facility, Lambertville, New Jersey.

60.     Defendants forfeited the balance in Dr. Crow's account in approximately July of 2013.

## CLASS ACTION ALLEGATIONS

61.     Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action pursuant to Fed.R.Civ.P. 23. Subject to confirmation, clarification

and/or modification based on discovery to be conducted in this action, the class that Plaintiffs seek to represent ("the Class") shall be defined as follows:

> all persons of the United States who, at any time since 2002 were incarcerated in a New Jersey prison institution who use or used the phone system provided by Defendants or, who established an advance pay account with Defendants in order to receive telephone calls from a person incarcerated in New Jersey.

62.     As used herein, "Class Members" shall mean and refer to the members of the Class as set forth above.

63.     This action is brought and properly may be maintained as a class action pursuant to the provisions of Fed.R.Civ.P. 23(a)(1)-(4) and 23(b)(1), (b)(2) or (b)(3) and satisfies the requirements thereof.

64.     **Numerosity – Fed.R.Civ.P. 23(a)(1).**     The members of the Class are so numerous that individual joinder of all the members is impracticable.  On information and belief, there are not less than tens of thousands of persons who have been affected by Defendants' conduct.  The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from Defendants' books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

65.     **Commonality and Predominance – Fed.R.Civ.P. 23(a)(2) and 23(b)(3).**  Common questions of law and fact exist as to the class members, as required by Fed.R.Civ.P. 23(a)(2), and predominate over any questions that affect only individual class members within the meaning of Fed.R.Civ.P. 23(b)(3).

66.     The common questions of fact include, but are not limited to, the following:

(a)     whether Defendants have failed to fully and adequately disclose to Plaintiffs and the other Class Members service charges to open and close the account that are assessed to the class members in connection with their use of Defendant's telephone service;

(b)     whether Defendants have failed to fully and adequately disclose to Plaintiffs and the other Class Members Defendant's practice of forfeiting the advance pay balance of their accounts whenever accounts remain unused for 90 days and charging monthly inactivity fees;

(c)     whether Defendants have failed to fully and adequately disclose to Plaintiffs and the other Class Members the per-minute rates that they will be and have been charged when calls are made to them by incarcerated persons;

(d)     whether Defendants' practice of requiring advance fee deposits with such charges, fees and forfeitures is a practice which warrants restitution or treble damages under the New Jersey Consumer Fraud Act;

(e)     whether Defendants' charging rates for phone calls that are a 100 times or more higher than the rates at which they are acquired and charging such opening, closing, transactional and forfeiture fees without disclosure of the amounts at the times of sale are unconscionable commercial practices and/or are practices constituting unfair enrichment; and

(f)     whether Plaintiffs and the other Class Members have sustained ascertainable losses and damages as a result of Defendant inflated and abusive charges and practices of non-disclosure and, if so, the proper measure and appropriate formula to be applied in determining such damages.

67.     The questions of law that are common to Plaintiffs and the other class members

include, but are not limited to, the following:

(a)     whether the practices of Defendant complained of herein and/or Defendant's failure to make full and adequate disclosures to their customers concerning such practices violate §201(b) of the Federal Communications Act and regulations thereunder and/or 48 N.J.S.A. § 48:3-1 and § 48:3-2;

(b)     whether the practices of Defendant complained of herein and/or Defendant failure to make full and adequate disclosures to their customer concerning such practices violate one or more provisions of the New Jersey Consumer Fraud Act ("CFA") and regulations promulgated thereunder;

(c)     whether the practices of Defendant complained of herein and/or Defendant's failure to make full and adequate disclosures to their customer concerning such practices constitute unfair, unlawful and/or fraudulent business practices which warrant a refund as unjust enrichment or treble damages under New Jersey law;

(d)     whether the inflated and abusive charges levied by the Defendants upon their customers pursuant to the exclusive monopoly rights granted by the State and County government constitutes an illegal taking in violation of 42 U.S.C.§1983; and

(e)     whether Plaintiffs and the other Class Members are entitled to the declaratory relief sought herein.

68.     **Typicality – Fed.R.Civ.P. 23(a)(3).**  Plaintiffs' claims are typical of the claims of the other class members whom they seek to represent under Fed.R.Civ.P. 23(a)(3) because Plaintiffs and each of the Class Members have been subjected to the same wrongful practices and have been damaged thereby in the same manner.

69.     **Adequacy of Representation – Fed.R.Civ.P. 23(a)(4).**  Plaintiffs will fairly and adequately represent and protect the interests of the class members as required by F.R.Civ.P. 23(a)(4). Plaintiffs are adequate representatives of the Class because they have no interests that are adverse to the interests of the other Class Members. Plaintiffs are committed to the vigorous prosecution of this action and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers.

70.     **Superiority – Fed.R.Civ.P. 23(b)(3)**   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and each of the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek

redress for Defendants' wrongful conduct.  Even if Class members could afford individual

litigation, the court system could not.  Individualized litigation creates a potential for inconsistent

or contradictory judgments, and increases the delay and expense to all parties and the court

system.  By contrast, the class action device presents far fewer management difficulties, and

provides the benefits of single adjudication, economy of scale, and comprehensive supervision

by a single court.

71.     **Declaratory and Injunctive Relief – Fed. R.Civ.P. 23(b)(2)**  In the alternative,

this action is certifiable under the provisions of Fed.R.Civ.P. 23(b)(1) and/or 23(b)(2) because:

(a)     the prosecution of separate actions by individual Class Member would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendant;

(b)     the prosecution of separate actions by individual Class Member would create a risk of adjudications as to them that would, as a practical matter, be dispositive of the interests of the other Class Members not parties to the adjudications or substantially impair or impede their ability to protect their interests; and

(c)     Defendant have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole and necessitating that any such relief be extended to the class members on a mandatory, class wide basis.

72.     Plaintiffs are aware of no difficulty that will be encountered in the management of

this litigation that will preclude its maintenance as a class action.

### FIRST COUNT
### (Violation of the New Jersey Consumer Fraud Act)

73.     Plaintiffs repeat and incorporate herein by reference each and every allegation in

paragraphs 1 through 72 as though fully set forth herein.

74.     Plaintiffs bring this claim pursuant to the New Jersey Consumer Fraud Act ("CFA").

75.     The CFA applies to Defendant's actions and conduct described herein because it extends to transactions that are intended to result, or that have resulted, in the sale of services to consumers with a nexus to New Jersey, *i.e.*¸ telephone calls placed from New Jersey.

76.     Plaintiffs and each Class Member are "consumers" within the meaning of CFA.

77.     The telephone service that Plaintiffs and Class Members obtained from Defendants comes within the definition of "services" set forth in CFA.

78.     Defendants have engaged in fraudulent and/or deceptive commercial practices in violation of the CFA by charging excessive, undisclosed fees and charges as described above.

79.     In addition, Defendants have engaged in an unconscionable commercial practice in violation of the CFA by charging excessive per-minute phone rates which are grossly in excess of Defendants cost, and grossly in excess of the market price for phone calls, which they are able to charge only because they have a monopoly on phone calls from designated detention facilities, free from competition.

80.     Likewise, Defendants' undisclosed fees are unconscionable in that Defendants provide no services and Plaintiffs receive no benefit in return for those charges and/or the fees and charges are grossly in excess of the incremental cost to Defendants for the activity for which the fees and charges are imposed.

81.     Plaintiffs and other Class Members have suffered an ascertainable loss as a result of Defendants violations by having to pay the foregoing excessive, undisclosed charges and fees, as well as having to pay excessive rates for making or receiving telephone calls from New Jersey inmates, as described above.

82.     Further, unless Defendants are enjoined from continuing to engage in these violations of the CFA, Plaintiffs and the other class members will continue to be injured by Defendant's actions and conduct.

**SECOND COUNT**
**(Violations of the Disclosure Requirements**
**of the CFA effective August 1, 2008)**

83.     Plaintiffs repeat the allegations contained in Paragraphs 1-82 as if fully set forth herein.

84.     New Jersey amended the CFA effective on August 11, 2008 to require certain additional disclosure requirements specifically applicable to prepaid telephone calling services, such as those offered by Defendants described above, to those who purchase those services, such as Plaintiffs and other Class Members.

85.     N.J.S.A. § 56:8-176(h) provides that a prepaid telephone service company "shall not impose any fee or surcharge that is not disclosed as required by this section or that exceeds the amount disclosed by the company."

86.     New Jersey has adopted pertinent rules and regulations to enforce the requirements of N.J.S.A. §56:8-176(h) which requires specific disclosures at the time of solicitation or sale.

87.     Those regulations provide that the amendment to the CFA and regulations promulgated pursuant thereto requiring disclosure by pre-paid telephone services are a supplement to the enforcement and prosecutions of other practices unlawful under the CFA.

88.     As described above, Defendants did not disclose their fees, surcharges and forfeiture policies when it required Plaintiffs to first open an account and purchase the right to receive calls.

89.     As described above, Defendants did not disclose the amounts of fees, surcharges and forfeiture policies to customers who received a collect call for the first time from an inmate.

90.     Defendants informed customers, like Plaintiffs, in the initial set up call that their telephone service was not programmed to receive collect calls and that they must open an account with Defendant and prepay that account in the amount of $25, $50, or $100 or they could not receive calls.  Defendants did not disclose any specific set-up or closure fees or surcharges or inactivity fees to be deducted and charged to customer's accounts at the time of the sale, as required by the N.J.S.A. § 56:8-176(a)(3) and applicable regulations.

91.     Defendants did not disclose that balances unused for 90 days would be forfeited when customers received their first invitation to purchase the rights to receive calls and open an account as required by N.J.S.A. § 56:8-176(a)(3).

92.     Defendants did not refer new customers to their websites in the first automated calls inviting customers to purchase the right to receive calls and open an account.

93.     Defendants web-site *now* references that there will be fees but that website fails to disclose the amounts of any set-up, closure or forfeiture fees as required by the N.J.S.A. § 56:8-176(a)(3).

94.     Defendants, up through the filing of the action, failed to disclose any specific fee amount that would be charged or forfeited by the customers at the time of sale as required by N.J.S.A. § 56:8-176(a)(3).

95.     Defendants also violate N.J.S.A. § 56:8-176(a)(8) by failing to disclose information required to be disclosed by regulations enacted by the Department of Consumer Affairs.  Those violations include failing to disclose:

a. Any surcharges and call setup charges, in violation of N.J.A.C. § 13:45A-8.3(a)(1);

b. The name of the provider of the actual calling services, in violation of N.J.A.C. § 13:45A-8.3(a)(2)(i);

c. The expiration period of the customer's account, in violation of N.J.A.C. § 13:45A-8.3(a)(2)(v);

d. That the service is subject to maintenance and other fees and charges, in violation of N.J.A.C. § 13:45A-8.3(a)(2)(vi);

e. Instructions as to how to obtain complete information about the use of the calling services, including fees and charges for, and any restrictions or limitations on the use of the account, in violation of N.J.A.C. § 13:45A-8.3(a)(2)(vii)

96. Defendants also violate N.J.A.C. § 13:45A-8.4 in that they charge fees, taxes, surcharges and other amounts which are not permitted fees and/or which are not disclosed pursuant to N.J.A.C. § 13:45A-8.3.

97. Defendants also violate N.J.A.C. § 13:45A-8.11 in that the calling time purchased from Defendants expire 90 days after their last use, but this expiration date is not provided to customers when they open their accounts.  In addition, Defendants violate this section in that the 90-day expiration date on accounts is less than the presumptive one-year expiration date set forth in this regulation for accounts without a specific expiration date.

98. Violations of the foregoing regulations are *per se* violations of the Consumer Fraud Act.

99.     Plaintiffs and other Class Members have suffered an ascertainable loss as a result of Defendants violations by having to pay the foregoing excessive, undisclosed charges and fees, as well as having to pay excessive rates for making or receiving telephone calls from New Jersey inmates, as described above.

100.    Further, unless Defendants are enjoined from continuing to engage in these violations of the CFA, Plaintiffs and the other class members will continue to be injured by Defendant's actions and conduct.

## THIRD COUNT
### (Violation of New Jersey Public Utilities Statutes)

101.    Plaintiffs repeat and incorporate herein by reference each and every allegation in paragraphs 1 through 100, inclusive, as though fully set forth herein.

102.    Plaintiffs bring this claim for relief on behalf of themselves and the Members of the Class.

103.    Intrastate phone rates within New Jersey are required to be "reasonable" and not discriminatory by N.J.S.A. § 48:3-1 and § 48:3-2, which provides in pertinent part that a company providing telecommunication services cannot:

a.     Make, impose or exact any unjust or unreasonable, unjustly discriminatory or unduly preferential individual or joint rate, commutation rate, mileage and other special rate, toll, fare, charge or schedule for any product or service supplied or rendered by it within this state;

b.     Adopt or impose any unjust or unreasonable classification in the making or as the basis of any individual or joint rate, toll, fare, charge or schedule for any product or service rendered by it within this state.

N.J.S.A. § 48:3-1 or

… adopt, maintain or enforce any regulation, practice or measurement which shall be unjust, unreasonable, unduly preferential, arbitrarily or unjustly discriminatory or otherwise in violation of law.

N.J.S.A. § 48:3-2

104.    Defendants have engaged in and continue to engage in the unlawful practices alleged herein and have failed and continue to fail to make full and adequate disclosures to their customers concerning these practices.

105.    Defendants' customers are charged for unauthorized and inappropriate connection fees, service fees and forfeiture charges among other charges which are unjust, unreasonable, discriminatory and preferential in violation of N.J.S.A. §§ 48-3.1 and 48:3.2.

106.    Defendants take steps to conceal their unfair, unreasonable, preferential and discriminatory charges to customer accounts willfully refusing to provide written account statements.

107.    Defendants have not filed rates with the New Jersey Board of Public Utilities.

108.    As a direct and proximate result of Defendant's violations of New Jersey Public Utility Laws, Plaintiffs and the New Jersey class have been damaged in an amount according to proof at trial.

## FOURTH COUNT
### (Unjust Enrichment)

109.    Plaintiffs repeat and incorporate herein by reference each and every allegation in paragraphs 1 through 108, as though fully set forth herein.

110.    Plaintiffs and other Class Members reasonably expect that they would only have to pay market rates for telephone calls placed by New Jersey inmates and would not have to incur other charges which provide no commensurate benefit to them.

111.    As is described above, Plaintiffs and other Class Members do not receive what they pay for with respect to the per-minute rates for telephone calls, because those rates are grossly in excess of market rates, nor do they receive what they pay for with respect to the

undisclosed fees and charges in that Plaintiffs and other Class Members receive no benefit whatsoever from those charges.

112.    Defendants have been unjustly enriched at the expense of Plaintiffs and other Class Members because Defendants have charged per-minute calling rates grossly in excess of market rates and charged excessive fees and charges that Defendants would not be able to charge but for the fact that they have a monopoly on telephone calls placed from New Jersey detention facilities and are not subject to any competitive pressures of the market.

113.    The revenues and profits derived from these excessive charges run into several million dollars per year.

114.    Under the circumstances it would be unjust for Defendants to keep such revenues and profits.

115.    As a result, Defendants should be required to disgorge and restore to Plaintiffs and the Class all monies wrongfully obtained by Defendant as a result of their extra charges to open and closed accounts, forfeited balances and all other improper charges, together with interest thereon.

116.    Wherefore Defendants should be enjoined from these unconscionable, abusive and extortionate billing practices and Defendants should pay over all such unjust enrichment received.

### **FIFTH COUNT**
**(Violation of The Federal Communications Act, 47 U.S.C. § 201)**

117.    Plaintiffs repeat and incorporate herein by reference each and every allegation in paragraphs l through 116, inclusive, as though fully set forth herein.

118.    Plaintiffs bring this claim for relief on behalf of themselves, the Members of the Class.

119.    Defendants are engaged in interstate wireless communications for the purpose of furnishing communication services within the meaning of § 201(a) of the Federal Communications Act ("FCA"), 47 U.S.C. § 201, *et seq.*

120.    Defendants' practices complained of herein constitute unjust and unreasonable charges and practices in connection with communication service and, therefore, violate § 201(b) of the FCA.   In addition, Defendants failure to make full and adequate disclosures of these practices to their customers violates CFR § 64.2401 and, therefore, violates §201(b) of the FCA.

121.    Defendants have not filed its rates with the Federal Communication Commission.

122.    As a direct and proximate result of Defendants' violations of §201(b) of the FCA, Plaintiffs and the other Class Members have been damaged in amounts according to proof at trial.

## SIXTH COUNT
### (Claim Under 42 U.S.C. § 1983 For Taking of Property Without Just Compensation In Violation of the Fifth Amendment)

123.    Plaintiffs repeat and incorporate herein by reference each and every allegation in paragraphs 1 through 122, inclusive, as though fully set forth herein.

124.    As is set forth above, Defendants are in a position to charge the excessive rates for telephone calls and impose unconscionable rates and fees because of their exclusive contracts with the State of New Jersey and various New Jersey Counties.

125.    Those contracts set the rates Defendants charge for making telephone calls from the facility or facilities subject to the contract, and further provide that Defendants will pay a percentage of the gross revenue (excluding certain collected taxes and fees) derived by Defendants as a result of the contract which shall be paid to the contracting governmental entity.

126.     Those percentages of revenue paid by Defendants to the governmental entities range from 40% in the case of the State of New Jersey to 60.5% in the case of Bergen County.

127.     Upon information and belief, the percentage of revenue and per-minute calling rates are agreed to as part of the process whereby the governmental entity contracts with the qualified bidder who will pay the highest revenue to the governmental entity.

128.     Defendants act under color of law for purposes of 42 U.S.C. § 1983.

129.     At all times pertinent hereto, Defendants have acted with the help of and in concert with state officials in that they were given the exclusive right to provide telephone services for inmates housed in the respective detention facilities.

130.     Controlling access to and communications with incarcerated persons is a traditional governmental function.

131.     But for the fact that Defendants have exclusive contracts with governmental entities to provide phone services to persons incarcerated within that entity's jurisdiction, Defendants would not be able to charge the excessive per-minute rates and unconscionable fees and charges to Plaintiffs and other Class Members because they would otherwise be able to purchase substitute phone service elsewhere at a significantly lower costs.

132.     The entities represented by the aforementioned state officials receive a substantial benefit from the unlawful activities of Defendants when the governmental entities are paid a portion of the revenues generated by the charges imposed by Defendants.

133.     The governmental entities' are encouraged by Defendants to turn a blind eye to, Defendants' imposition of unconscionable fees and charges on top of the already unconscionable per-minute charges for telephone calls.

134.    Defendants' excessive and unconscionable charges constitute a taking of property from the Plaintiffs without just compensation and is contrary to the Fifth Amendment of the Constitution.

135.    Plaintiffs and other Class Members have a property interest in their money.

136.    The calling time that Plaintiffs and other Class members receive is not just and adequate compensation for the unconscionably excessive per-minute charges for phone calls imposed by Defendants.

137.    In addition, as is set forth above, the other fees and charges imposed by Defendants, such as the 20% set-up fee, the per-call connection fee, the $5.00 refund charges, inactivity fees and the forfeiture of unused accounts, are likewise a taking of property without just compensation because those charges are grossly in excess of any benefit provided.

138.    The State and Counties have delegated authority to the Defendant's sufficient that the Defendants' forfeiture actions and takings of the Plaintiffs' money is an illegal taking by virtue of State action with the meaning of 42 U.S.C. §1983.

139.    As a result of the imposition of the foregoing unlawful charges and fees, Plaintiffs and other Class Members have been damaged.

## SEVENTH COUNT
### (Declaratory Relief Under The Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*)

140.    Plaintiffs repeat and incorporate herein by reference each and every allegation in paragraphs 1 through 139, inclusive, as though fully set forth herein.

141.    Plaintiffs bring this claim for relief on behalf of themselves and other similarly situated prisoners and detainees.

142.    An actual controversy has arisen and now exists between Plaintiffs and the other Class Members, on one hand, and Defendants, on the other hand, concerning their respective rights and duties in that Plaintiffs and the other Class Members contend that Defendant has engaged in and are continuing to engage in the unlawful practices alleged herein and have failed and continue to fail to make full and adequate disclosures to their customers concerning these practices, while Defendant apparently will contend that their actions and conduct are lawful and proper.

143.    A judicial declaration is necessary and appropriate at this time, under the circumstances presented, in order that Plaintiffs and the other class members may ascertain their rights and duties with respect to Defendant's practices.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

(a)    For compensatory damages;

(b)    For treble damages in accordance with the New Jersey Consumer Fraud Act;

(c)    For an Order enjoining Defendants from engaging in the practices alleged herein and/or mandating that Defendants make full and adequate disclosures to their customers concerning these practices.

(d)    For disgorgement and restitution to Plaintiffs and the other Members of the Class of all monies wrongfully obtained by Defendants; and

(e)    For prejudgment interest on the monies wrongfully obtained by Defendants from the date of collection through the date of entry of judgment in this action;

(f)     For all attorneys' fees, expenses and recoverable costs reasonably incurred in connection with the commencement and prosecution of this action in accordance with the Consumer Fraud Act and 42 U.S.C. § 1988; and

(g)     For such other and further relief as the Court deems just and proper.

**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO PC**
Attorneys for Plaintiffs


By: /s/ James E. Cecchi
    JAMES E. CECCHI

**WALDER, HAYDEN & BROGAN, P.A.**
Attorneys for Plaintiffs


By: /s/ James A. Plaisted
    JAMES A. PLAISTED

Dated:  August 20, 2013

## JURY TRIAL DEMAND

Plaintiffs request jury trial on all issues so triable.

**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO PC**
Attorneys for Plaintiffs


By: /s/ James E. Cecchi
    JAMES E. CECCHI

**WALDER, HAYDEN & BROGAN, P.A.**
Attorneys for Plaintiffs


By: /s/ James A. Plaisted
    JAMES A. PLAISTED

Dated:  August 20, 2013