UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BOBBIE JAMES *et al.*,**<br><br>     **Plaintiffs,**<br><br>     v.<br><br>**GLOBAL TEL\*LINK CORPORATION, INMATE TELEPHONE SERVICE, and DSI-ITI LLC,**<br><br>     **Defendants.** | Docket No.: 13-4989-WJM-MF<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

This is a putative class action involving the fees charged for phone calls originating from prison pay phones in the state of New Jersey. Defendants filed a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint. For the reasons set forth below, the motion is hereby denied.

**I.     BACKGROUND**

   **a. Allegations of the Complaint**

Defendants provide managed telecommunications services at state and local correctional facilities in New Jersey so inmates can communicate with family members, friends, attorneys, and other approved persons outside the correctional facilities. (Complaint at ¶ 12) Defendants are three corporate entities that operate as a single economic unit with respect to the telecommunications services relevant to the Complaint. (Complaint at ¶ 15) Defendants have the sole right to provide telecommunications services for people incarcerated in certain New Jersey state and county prison and detainee facilities. (Complaint at ¶ 16)

Plaintiffs are all people who had to use the Defendants' services in order to communicate with a friend or family member.[1] Plaintiffs allege that Defendants charged illegally and unconscionably high and undisclosed rates and fees to a captive market. (Complaint at ¶ 22) Plaintiffs filed a Complaint with seven causes of action: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"); (2) violations of certain sections of the NJCFA and N.J.A.C. § 45A-803; (3) violation of the New Jersey public utilities statutes (N.J.S.A. § 48-3.1 and 3.2); (4) unjust enrichment; (5) violation of the Federal Communications Act, 47 U.S.C. § 201 ("FCA"); (6) violation of the Takings Clause of the Fifth Amendment; and (7) declaratory judgment.

Plaintiffs allege that the State of New Jersey benefits financially from the Defendants' monopoly. (Complaint at ¶¶ 17-19) Specifically, Defendants remit to the state 40% of the rates charged and 50% or more to the counties of Hudson, Bergen, Essex, and Monmouth. (Complaint at ¶¶ 18-19) New Jersey receives $4.42 million per year as its percentage of revenue pursuant to its contract with Defendants. (Complaint at ¶ 19)

The Complaint alleges that Defendants purchase their minutes for calls terminating within the United States for less than 3/10 of a penny per-minute, and Defendants often resell the minutes they buy at more than 100 times their cost to Plaintiffs and other Class Members. (Complaint at ¶ 23) The market rate for competitively priced prepaid calling cards is approximately 1¢ to 2¢ per minute for calls within the United States. Depending upon the country being called, the rates for international calls can be as low as 1¢ per minute. Defendants, however, charge approximately 30¢ per minute for calls within the United States. The Complaint also alleges that Defendants charge exorbitant rates for international calls. (Complaint at ¶ 24)

Plaintiffs allege that Defendants' customers establish their accounts over the phone. (Complaint at ¶ 25) When a prisoner wishes to call someone outside the detention facility, they must place a collect call to that person. (*Id.*) The called person hears a series of automated prompts to set up an account with Defendants in order to accept the call. (*Id.*) The same automated procedures are followed when customers seek to open an account by calling the Defendants' 800 number provided at the prison facility to customers. (*Id.*)

---

[1] Four Plaintiffs are residents of New Jersey. Plaintiffs John Crow and Barabara Skladany are residents of New York. Plaintiff Milan Skladany was a resident of New Jersey until 2011, when he returned to the Slovak Republic. Defendants are privately held Delaware corporations with principal places of business in Alabama. (Complaint at ¶ ¶ 6-16)

Using standardized scripts and prompts, the Defendants' system sets up an account for the customer or called person using a credit or debit card provided by the customer. (Complaint at ¶ 26) These accounts must be set up in amounts of $25, $50, or $100. (Complaint at ¶ 26) After the account is set up, the called person is then provided with a PIN so he or she may accept calls from the prisoner in the future, and charges for all calls are deducted from the called person's account. (Complaint at ¶ 26)

The Complaint alleges that Defendants tell customers that no information on rates and charges are available until they have an account number. (Complaint at ¶ 27) Defendants do not provide customers with a written contract when they establish an advance pay account with Defendants by telephone, nor are they advised of any of the terms and conditions applicable to their accounts. (Complaint at ¶ 28)

The Complaint alleges that Defendants do not issue account statements in writing or electronically to customers in the ordinary course of business. When making or receiving a call, customers hear a voice prompt advising them how much money is left in their accounts, but customers cannot obtain an itemized statement of charges to their accounts, nor can customers determine how many minutes of calling time they have left because Defendants do not disclose rates and applicable charges. (Complaint at ¶ 29)

The Complaint alleges that Defendants fail to inform their customers that they will be charged a service or set-up fee which will be deducted from their advance pay balance when an account is first established. (Complaint at ¶ 30)

The Complaint alleges that Defendants charge an unconscionable service fee of approximately 20% of the deposit, *i.e.* $4.75 out of the first $25.00 deposit, $9.50 out of the first $50.00 deposit, and $19.00 out of the first $100.00 deposit when an account is first established. (Complaint at ¶ 31)

The Complaint alleges that Defendants fail to inform their customers when an account is first established that they will be charged fees (a per-call transaction or connection fee) for each call placed in addition to the call rates per minute. (Complaint at ¶ 32) Defendants charge upwards of $1.75 per call as a connection or transaction fee. (Complaint at ¶ 33)

The Complaint alleges that Defendants charge a $5.00 fee to close an account and obtain a refund of any remaining balance. However, Defendants fail to inform

their customers when an account is first established that they will be charged this additional service fee to close the account. (Complaint at ¶ 34)

The Complaint alleges that Defendants fail to inform their customers when an account is first established that their account balances will be forfeited if they do not use Defendants' service for a 90-day period. (Complaint at ¶ 35)

The Complaint alleges that Defendants fail to inform their customers when an account is first established that a monthly inactivity fee will be charged against their account for any months when it is not used. (Complaint at ¶ 36)

The Complaint alleges that because customers must purchase calling time in multiples of $25, $50, or $100 and must establish an account in advance of paying for calls, it is inevitable that customers will not use the exact amount of money in their account. As a result, every customer will incur either the $5.00 fee to close their account or will forfeit their account as a result of it being inactive for 90 days. (Complaint at ¶ 37)

The Complaint alleges that Defendants also fail to advise customers that the customer's account may be frozen if Defendants deem the amount remaining in the account to be too little to accept calls from an inmate. In order to unfreeze the account so he or she can receive calls, the customer must recharge his or her account, while incurring service charges of 20% of the amount deposited in doing so. (Complaint at ¶ 38)

### b. New FCC Regulations

Since Plaintiffs filed this Complaint, the Federal Communications Commission ("FCC") issued a series of regulations ("the new regulations") that appears to address the issues in this case in a manner unfavorable to Defendants. 78 Fed. Reg. 67956. On November 12, 2013, the FCC stated that inmate calling service ("ICS") rates and charges were frequently unjust, unreasonable, and unfair, and therefore in violation of the Federal Communications Act. 78 Fed. Reg. 67956. The new regulations were designed to "provide relief to the millions of Americans who have borne the financial burden of unjust and unreasonable interstate inmate phone rates." *Id.* The new regulations mandate that ICS rates and ancillary services be cost-based. In preparation of the new regulations, the FCC conducted a study about what the fair cost-based rates of ICS services would be. As a result of this study, the FCC created interim safe-harbor ICS rates. Rates below 12¢ per minute for prepaid interstate calls are presumptively reasonable. The new regulations imposed an

interim rate cap of 21¢ per minute for interstate prepaid calls. The new regulations also banned the practice of recovering site commission payments – fees paid by ICS providers to the state in order to win exclusive rights to provide their services – through ICS rates or ancillary charges.

The Commission notes in the Federal Register that it is in the process of seeking additional information that could result in revisions of the new regulations. 78 Fed. Reg. 67957. The new regulations also require ICS providers to submit data on their underlying costs so that the Commission can develop a permanent rates structure. *Id.*

On November 14, 2013, Defendants appealed the new regulations in the D.C. Circuit. *Global Tel*Link v. FCC*, No. 13-1281. On January 13, 2014, the D.C. Circuit stayed 47 C.F.R. § 64.6010 (cost-based rates and fees), 47 C.F.R. § 64.6020 (interim safe harbor rates), and 47 C.F.R. § 64.6060 (annual reporting requirements) pending the outcome of the appeal. The Defendants, along with similarly-situated ICS companies from around the country, are appealing the FCC's new regulations as being unlawful for a variety of reasons. (*See Global Tel*Link v. FCC*, No. 13-1281, Document # 1494131)

Moreover, on August 8, 2014, the Defendants notified this court that in July 2014, the New Jersey Board of Public Utilities ("BPU") issued a Notice of Action ("Notice") on a Petition for Rulemaking filed by a group of prisoners, prisoners' families, and prisoners' rights groups. (ECF No. 30) The Petition asked the agency to set rate caps for intrastate inmate calls at 5¢ per minute. (*Id.*) In its Notice, the BPU stated that it "has been considering this petition and is still reviewing the merits of the petitioner's suggested new rules" and that it will continue this deliberation until October 31, 2014. (*Id.*) At that time, the BPU will finalize its Notice of Action on the petition. (*Id.*)

## II.   JURISDICTION

This court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) ("Class Action Fairness Act") because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and cost, there are at least one hundred members of the proposed class, and at least one member of the proposed class is a citizen of a different state than the Defendants. Jurisdiction is also proper in this court pursuant to 28 U.S.C. § 1331 because this matter involves federal questions under 47 U.S.C. § 201 and 42 U.S.C. § 1983. The court has supplemental

jurisdiction over Plaintiffs' state law claims because they arise from "a common nucleus of operative facts." *Lyon v. Whisman*, 45 F.3d 758, 760 (3d Cir. 1995).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998) (*citing Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.* at 678.

### IV. DISCUSSION

Defendants' main argument on this motion to dismiss is that the court should abstain from hearing the case on the grounds that the FCC has primary jurisdiction. This argument is pointed at Plaintiffs' cause of action for a violation of the Federal Communications Act. While the court agrees that the FCC has primary jurisdiction over certain issues in this case, it will stay the case rather than dismiss it.

### a. Federal Communications Act

Plaintiffs claim that Defendants violated 47 U.S.C. § 201(b), which states: "All charges, practices, classifications, and regulations for and in connection with [a common carrier] communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful."

Section 207 of the FCA creates a private cause of action for Plaintiffs seeking recovery for a violation of Section 201. Section 207 provides that:

> [a]ny person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

47 U.S.C. § 207.

Plaintiffs have elected the option of bringing suit in district court. Construing Sections 201 and 207 together, the Plaintiffs demonstrate liability under the FCA if they can prove that Defendants' conduct was "unjust or unreasonable." For the reasons set forth below, this court will not determine whether the challenged conduct was "unjust or unreasonable" under Section 201. That is an issue determination that is better left for the FCC to make in the first instance. Plaintiffs may file an administrative complaint with the FCC for determination of the issue without losing their right to pursue damages in this court. *See Raritan Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011); *Waudby v. Verizon Wireless Services, LLC*, No. 07-470, 2007 WL 1560295, at *5 (D.N.J. May 25, 2007).

### b. Primary Jurisdiction

Defendants argue that the court should, pursuant to the doctrine of primary jurisdiction, dismiss the case because the FCC has primary jurisdiction to determine whether the challenged charges and practices are "just and reasonable" under the FCA. The court agrees that the FCC has primary jurisdiction; however, the court

finds that staying the case, rather than dismissing it, is the appropriate course of action.

The doctrine of primary jurisdiction, despite its name, does not implicate the jurisdiction of a federal court. Rather, it is a principle of judicial administration designed to achieve coordination between administrative agencies and the courts. *Puerto Rico Mar. Shipping Auth. v. Valley Freight Sys., Inc.*, 856 F.2d 546, 549 (3d Cir. 1988) (*citing Cheyney State College Faculty v. Hufstedler*, 703 F.2d 732, 736 (3d Cir. 1983)). "The doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008).

"The doctrine of primary jurisdiction applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Raritan Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011) (*citing United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)). If the court applies the doctrine of primary jurisdiction, the judicial proceedings are suspended pending the agency's adjudication of the issue within the agency's special competence. *Id.*

The term "referral" is something of a misnomer in this case because there is no mechanism here for the court to request or demand that the FCC decide an issue. *See Reiter v. Cooper*, 507 U.S. 258, 269 n. 3 (1993). Rather the court here considers whether it should stay the proceedings to allow the filing of an administrative complaint. *Id.*

Four factors should be considered in deciding whether to refer an issue to an administrative agency: (1) whether the issues presented fall within the "conventional expertise" of judges; (2) whether the issues are within the agency's discretion or require the exercise of the agency's expertise; (3) whether there are any dangers of inconsistent rulings between the courts and agency; and (4) whether a prior application has been made to the agency. *Oh v. AT&T Corp.*, 76 F. Supp. 2d 551, 557 (D.N.J. 1999).

Cases involving "abstract statutory terms such as 'reasonable'" are particularly well suited for transfer to an administrative agency." *Demmick v. Cellco Partnership*, 2011 WL 1253733, at *5 (D.N.J. March 29, 2011). This is particularly

true for the meaning of "reasonable" under Section 201 of the FCA. *Oh*, 76 F. Supp. 2d at 557 (stating that courts "have consistently found that claims which allege unreasonable practices in violation of § 201(b) [of the FCA] fall within the primary jurisdiction of the FCC."); *Demmick*, 2011 WL 1253733, at *6 ("[R]easonableness determinations under § 201(b) [of the FCA] lie within the primary jurisdiction of the FCC, because they involve policy considerations within the agency's discretion and particular field of expertise.").

Primary jurisdiction should be used sparingly because it can result in added expense and delay. *Alpharma, Inc. v. Pennfield Oil Co.*, 411 F.3d 934, 938 (8th Cir. 2005); *Waudby v. Verizon Wireless Services, LLC*, No. 07-470, 2007 WL 1560295, at *4 (D.N.J. May 25, 2007) ("[C]ourts must balance the advantages of applying the primary jurisdiction doctrine against the potential costs resulting from complications and delay in the administrative proceedings."). When "the matter is not one peculiarly within the agency's area of expertise, but is one which the courts or jury are equally well-suited to determine, the court must not abdicate its responsibility." *Raritan Baykeeper v. NL Indus., Inc.*, 660 F.3d 686, 691 (3d Cir. 2011). Where the issue is simply one of whether a rule has been violated, primary jurisdiction should not be applied, but where the question is whether an act is reasonable, primary jurisdiction should be applied. *See Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1497 (10th Cir. 1996); *U.S. v. Elrod*, 627 F.2d 813, 818 (7th Cir. 1980).

Plaintiffs argue that primary jurisdiction is inapplicable because the FCC has already determined the issue of reasonable ICS rates. If the only issue were whether the Defendants had violated the new regulations, then indeed, primary jurisdiction would be inapplicable. *See Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1497 (10th Cir. 1996); *U.S. v. Elrod*, 627 F.2d 813, 818 (7th Cir. 1980). However, the issue is not whether the Defendants have violated the new regulations, but whether their charges and practices *prior to* the issuance of the new regulations violated the FCA, 47 U.S.C. § 201. Moreover, due to the pending appeal in the D.C. Circuit, it is not clear that the new regulations will even remain in place.

Under these circumstances, the first three primary jurisdiction factors weigh heavily in favor of its application. The reasonableness of the Defendants' charges and practices under the FCA "implicates technical and policy questions" that the FCC has the special expertise to decide in the first instance. *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Likewise, the issue of whether ICS rates are "just and reasonable" under the FCA falls outside the conventional expertise of judges. There is a great danger of inconsistency between the court and the FCC if this case proceeds without the FCC first determining whether the Defendants'

9

charges and practices were reasonable under the FCA prior to the issuance of the new regulations.

The fourth factor has little weight here. Although the FCC issued its new regulations because of prior complaints about practices like the Defendants' rates and charges, *see* 78 Fed. Reg. 67956, the FCC did not address the exact charges and practices of these Defendants. Nor is it clear whether the FCC intended that the new regulations apply retroactively. For these reasons, the court will stay the case until the FCC determines whether Defendants' charges and practices *prior* to the new regulations violated the FCA.

### c. Scope of the Stay

Plaintiffs urge the court to stay only the FCA cause of action while discovery commences on the other causes of action. In this jurisdiction, we find no cases where the court merely stayed an FCA cause of action pursuant to primary jurisdiction while allowing the other causes of action to go forward. *See, e.g.*, *Oh v. AT&T Corp.*, 76 F. Supp. 2d 551, 557 (D.N.J. 1999); *Demmick v. Cellco Partnership*, 2011 WL 1253733, at *5 (D.N.J. March 29, 2011); *Waudby v. Verizon Wireless Services, LLC*, No. 07-470, 2007 WL 1560295, at *4 (D.N.J. May 25, 2007).

We find one case from the District of Kansas, *In re Universal Service Fund Telephone Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1153 (D. Kan. 2003), where the court did refer an FCA cause of action while allowing three other causes of action to proceed to discovery. The *Universal Service Fund* case does not, however, provide an analogy that warrants deviating from the usual custom within this district. In *Universal Service Fund*, the causes of action that the court permitted to proceed to discovery were not related to acts subject to review by the FCC. In this case, by contrast, all causes of action arise from the same charges and practices, and the FCC can review all of these actions for reasonableness under the FCA.

The facts of this case are more similar to *Waudby v. Verizon Wireless Services, LLC*, No. 07-470, 2007 WL 1560295, at *4 (D.N.J. May 25, 2007). In that case, Plaintiffs brought a putative class action against Verizon, alleging that its early termination fees violated both state law and the FCA. The court in *Waubdy* elected to stay the entire case, finding that allowing the FCC first to rule on the challenged actions "would promote uniformity and consistency in its regulation of the telecommunications industry." *Id.*, at *7 (*citing Kiefer v. Paging Network, Inc.*, 50 F. Supp. 2d 681, 683 (E.D. Mich. 1999)). Staying the proceedings until after the FCC rules on the reasonableness issue prevents the court from "interfering with or

contradicting any FCC rulings and [allows] the Court to address remedy issues left open after the FCC decision." *Id.*, at * 5.

While the FCC's determination in this case is not dispositive to any of the non-FCA causes of action, its determination could influence the ultimate outcome of the other causes of action. Moreover, the overhanging uncertainty about the FCC's determination could make discovery on the other causes of action more contentious than necessary. For these reasons, we consider it more prudent to follow the other courts in our district and stay the entire case until the FCC rules on the reasonableness of the Defendants' charges and practices, or the Plaintiffs drop the FCA cause of action.

As noted above, there is no legal mechanism for this court to "refer" the case to the FCC. Moreover, Plaintiffs suggested at oral argument that they may not seek the FCC's determination on the reasonableness of the challenged charges and practices even if the court stays the case for them to do so. Because such inaction on the part of the Plaintiffs would cause further undue delay, we add the following directive to the opinion and order to effectuate a "referral:" that Plaintiffs shall file an administrative complaint with the FCC within 90 days of the D.C. Circuit's filing of the opinion in the pending appeal, *Global Tel*Link v. FCC*, No. 13-1281. If Plaintiffs fail to do so, the Defendants may petition the court to dismiss the FCA cause of action for lack of prosecution.

## V. CONCLUSION

For the reasons set forth above, the Defendants' motion to dismiss is denied. The case is stayed until the FCC determines whether the challenged charges and practices violated the FCA, 47 U.S.C. § 201, the Plaintiffs voluntarily dismiss the FCA cause of action, Plaintiffs fail to file an administrative complaint with the FCC within 90 days of the filing of the D.C. Circuit's opinion in the pending appeal (*Global Tel*Link v. FCC*, No. 13-1281), or either party petitions the court with other good cause for lifting the stay.

/s/ William J. Martini
_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 8, 2014**