# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BOBBY JAMES,** *et al.*, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**GLOBAL TEL\*LINK CORP.,** *et al.*,<br><br>Defendants. | Docket No.: 13-4989<br><br><br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs bring this class action against Defendant Global Tel*Link and its subsidiaries (collectively, "GTL" or "Defendants") in connection with GTL's provision of inmate calling services ("ICS") to correctional facilities in New Jersey. GTL moves for judgment on the pleadings pursuant to FRCP 12(c) or, in the alternative, summary judgment pursuant to FRCP 56. ECF Nos. 212-15. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

The facts and procedural history of this case were set forth in detail in the Court's opinions granting class certification, ECF No. 179 ("Class Cert. Opinion"), and denying summary judgment, ECF No. 181 ("SJ Opinion"), familiarity with which is assumed. In the SJ Opinion, the Court concluded, *inter alia*, (1) New Jersey Consumer Fraud Act ("CFA") claims do not require deception and (2) GTL qualifies as a "state actor" for purposes of Plaintiffs' Section 1983 claim. SJ Op. at 9-15. GTL now moves for judgment on the pleadings pursuant to FRCP 12(c), or, in the alternative, summary judgment pursuant to FRCP 56. ECF Nos. 212-15.

## II. LEGAL STANDARD

The parties disagree on what legal standard applies to the issues before the Court. Plaintiffs argue that because GTL previously moved for summary judgment, the motion for reconsideration standard should apply. Opp. at 2-5, ECF No. 220. In reply, GTL argues that the reconsideration standard is inappropriate, as the motion raises issues not presented to the Court or discussed in its prior opinions. Reply at 1-2, ECF No. 229.

In the Court's view, except as to whether "deception" is required for a CFA claim, GTL's brief raises new issues and therefore is not a motion for reconsideration. With respect to whether FRCP 12(c) or FRCP 56 applies, GTL supplied its statement of material facts "in case the Court

1

deems it appropriate to convert the motion to a motion for summary judgment." GTL Br. at 3. Given that GTL was granted leave to file the present motion after representing it "can be decided on the pleadings," converting the motion into one for summary judgment would not be appropriate. GTL Ltr. (Jan. 15, 2020), ECF No. 205. Accordingly, the motion will be decided under the FRCP 12(c) standard, which, like FRCP (12)(b)(6), dictates that the Court accept all allegations in the complaint as true and reach all reasonable inferences in the non-movants' favor. *E.g.*, *Revell v. Port Auth. of New York, New Jersey*, 598 F.3d 128, 134 (3d Cir. 2010).

## III. DISCUSSION

Regardless of the procedural mechanism, GTL's arguments are the same: (1) Plaintiffs' takings claim fails as a matter of law because the circumstances of GTL's provision of phone services do not constitute a "taking" and, in any event, GTL is entitled to immunity, (2) Plaintiffs' CFA claim fails because, as a government actor, GTL is immune, and (3) both the CFA and Section 1983 claims fail because they rely on the premise that "site commissions" are not legitimate charges. *See* GTL Br., ECF No. 215.

### A. Adequacy of Takings Claims

GTL asserts that the facts alleged do not state a takings claim on which relief can be granted. GTL Br. at 9-20. The Takings Clause of the Fifth Amendment dictates that "private property [shall not] be taken for public use, without just compensation." U.S. Const., Amend. 5. This is not a typical takings case. Plaintiffs' theory is that by charging excessive rates and ancillary fees that do not approximate costs, GTL has "taken" Plaintiffs' property. GTL argues that takings claims require legal compulsion to surrender property, and none occurred here. GTL Br. 11-14. Plaintiffs respond by citing a series of cases challenging fees for using government services or facilities, noting that they did not involve legal compulsion. *See* Opp. at 31. However, with the exception of *United States v. Sperry Corp.*, 493 U.S. 52 (1989), none of those cases actually involved takings claims.[1] Accordingly, they are irrelevant.

In *Sperry Corp.*—the only case Plaintiffs cite involving a takings claim—the Supreme Court *rejected* a challenge to a 1.5% fee on judgments awarded through a special tribunal with exclusive jurisdiction over individuals' claims against Iran. 493 U.S. at 55–56 (1989). The Court did *not* hold, as Plaintiffs suggest, that government-imposed user fees must be a "fair approximation of the cost of the benefits supplied" in order to *not* constitute a taking. Opp. at 32. Instead, the Court found that "[t]he deductions authorized by [the enabling act] are not so clearly excessive as to belie their purported character as user fees." *Id.* at 60-62 (cleaned up). Thus, the Court implied that if a purported "user fee" was so egregiously disproportionate to costs (i.e., "clearly excessive"), it could constitute a taking. *See id.* But because the Court found that the

---

[1] *Massachusetts v. United States*, 435 U.S. 444, 446, 98 S. Ct. 1153, 1156, 55 L. Ed. 2d 403 (1978) ("The constitutional question presented . . . is whether this tax . . . violates the implied immunity of a state government from federal taxation."); *U.S. Shoe Corp. v. United States*, 114 F.3d 1564, 1566 (Fed. Cir. 1997), *aff'd*, 523 U.S. 360 (1998) (affirming decision that harbor maintenance tax violated Export Clause of the Constitution); *Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Auth.*, 906 F.2d 516, 517 (11th Cir. 1990) (appealing judgment on Commerce and Due Process Clause claims).

1.5% fee was not so excessive as to "qualify as a 'taking,'" it had no occasion to analyze whether legal compulsion was also required. *See id.* Accordingly, *Sperry Corp.* is also unhelpful to Plaintiffs on this point.[2]

Finally, in *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, which Plaintiffs cite elsewhere in their brief, creditors challenged the government's practice of (1) charging a percentage fee on court-managed "interpleader fund" accounts while also (2) retaining the interest the account accrued. 449 U.S. 155, 156-58 (1980). The creditors held a property interest in the account but had no control over whether the debtor decided to file the interpleader action or open the fund. *Id.* at 156-57 ("[A]s permitted by the Florida Bulk Transfers Act . . . Eckerd's filed a complaint of interpleader in the Circuit Court . . . [which] thereupon ordered that the amount tendered be paid to the court's clerk."). Thus, by withholding interest earned on the account without any justification—as the government also charged a healthy fee—the government "took" the interest. *Id.* at 163 ("the exaction is a *forced* contribution to general governmental revenues" (emphasis added)). Here, Plaintiffs' themselves deposited the funds. Thus, this case is quite different.

Without citing a single case upholding a takings claim in the absence of a legally compelled transfer of property, Plaintiffs ask the Court to endorse their atypical interpretation of the Fifth Amendment. But, given the lack of supporting precedent, convincing authority contrary to Plaintiffs' position, and the (relatively) plain language of the Fifth Amendment, the Court declines to do so. *See Arsberry v. Illinois*, 244 F.3d 558, 565 (7th Cir. 2001). The Constitution prohibits "private property [from being] *taken* for public use, without just compensation." U.S. Const., Amend. 5 (emphasis added). "Taken" implies *legal* compulsion, not a lack of reasonably priced options, even for crucial service like ICS. Accordingly, Defendants' motion to dismiss, with respect to Plaintiffs' takings claims, is **GRANTED**.[3] The Court need not reach GTL's alternative arguments.

## B. New Jersey Consumer Fraud Act Claims

GTL also argues that the CFA claims should be dismissed because (1) GTL is derivatively immune from liability given the Court's prior conclusion that GTL was acting under color of law, (2) GTL is entitled to qualified immunity, and (3) CFA claims require deceptive conduct.

### 1. *Immunity for Government-Approved Charges*

GTL argues that it shares in the Governments' "absolute immunity" from CFA liability "under the well-recognized principle of derivative immunity." GTL Br. at 25. In support of

---

[2] The unique circumstances of *Sperry Corp.* explain why the Court focused on the potential excessiveness of user fees rather than legal compulsion. In that case, the plaintiff was, in a sense, legally compelled to pay the fee because it was precluded from recovering damages (i.e., property) from Iran without using the tribunal and paying the associated fees to the U.S. government. *See id.* at 55-56 (describing purpose of tribunal as "preclude[ing] litigation by Americans against Iran in American courts"). In fact, the parties reached a settlement without utilizing any of the tribunal's adjudicatory services, but the Court still found the "user fee" permissible. *Id.* at 56.

[3] The Court retains supplemental jurisdiction over the CFA claims, 28 U.S.C. § 1367, and, in any event, the parties are sufficiently diverse for jurisdiction to be maintained, compl. ¶¶ 6-16; 28 U.S.C. § 1332(d).

3

their argument, GTL relies heavily on the New Jersey Supreme Court's decision in *Vanchieri v. N.J. Sports & Exposition Authority*, 514 A.2d 1323 (N.J. 1986). GTL Br. at 25. In that decision, the court noted that public contractor's immunity "is an affirmative defense" and a contractor-defendant "should not be immune from suit by the mere fortuity that it contracted with [the government] rather than with a private entity." *Vanchieri*, 514 A.2d at 1326. To account for the "legitimate concern that injured plaintiffs not be unduly denied compensation for their injuries," questions of immunity require "careful scrutiny." *Id.* Thus, the New Jersey Supreme Court reversed the trial court's grant of summary judgment in the contractor's favor. *Id.* at 1327.

While GTL *may* qualify for contractor derivative immunity, this motion is decided under FRCP 12(c), in which the Court applies the FRCP 12(b)(6) standard. *See supra* Part II. Plaintiffs need not plead around affirmative defenses to survive a 12(b)(6) motion. *See Schmidt v. Skolas*, 770 F.3d 241, 252 (3d Cir. 2014). Contractor derivative immunity is an affirmative defense. *See Vanchieri*, 514 A.2d at 1326. Accordingly, Plaintiffs need not plead around it to survive the current motion. *See Schmidt*, 770 F.3d at 252.

Further, at least one of the two justifications offered in *Vancieri* for derivative immunity is not fully applicable here. Citing general "notions of fairness," the New Jersey Supreme Court reasoned that "[a]n independent contractor bound to specifications that are provided by a public entity and over which it has no control is not responsible for defects in those specifications." *Id.* at 1323. But here, GTL (1) proposed the site commission structure employed and (2) charged additional fees that were not required by government contracts. *See* Compl. ¶¶ 1, 38, 137. Thus, at this stage, the Court cannot conclude GTL is entitled to derivative immunity as a matter of law. Defendants can present their affirmative defense at trial and, if appropriate, move for judgment as a matter of law.

### 2. *Qualified Immunity*

GTL alternatively argues that it is entitled to qualified immunity. GTL Br. at 30-32. Plaintiffs respond that qualified immunity does not apply to CFA claims and, in any event, it does not apply to GTL. Opp. at 11-13, 28. The Court need not reach the question of whether qualified immunity would protect against CFA claims because, even if it would, GTL is not protected by it. New Jersey's "qualified immunity doctrine tracks the federal standard." *Brown v. State*, 165 A.3d 735, 743 (N.J. 2017). In *Richardson v. McKnight*, the Supreme Court found that privately employed prison guards could not claim qualified immunity. 521 U.S. 399, 408-09 (1997). In reaching a narrow holding,

> the Court emphasized that the particular circumstances of that case—"a private firm, systematically organized to assume a major lengthy administrative task (managing an institution) with limited direct supervision by the government, undertaking that task for profit and potentially in competition with other firms"— combined sufficiently to mitigate the concerns underlying recognition of governmental immunity . . . .

*Filarsky v. Delia*, 566 U.S. 377, 393 (2012) (quoting *Richardson*, 521 U.S. at 413).

Precisely the same circumstances are present here. As alleged, GTL provides ICS services to New Jersey correctional facilities (i.e., a major, lengthy administrative task with

4

limited direct supervision). Compl. ¶ 12. It is easily inferable that as a private entity, GTL does so for a profit and competed with other private firms to be the exclusive ICS provider. Compl. ¶ 14-16, 12-14.[4] *Cf. Richardson*, 521 U.S. at 413 ("undertaking that task for profit and potentially in competition with other firms"). Thus, like in *Richardson*, Defendants are not entitled to claim qualified immunity. *See* 521 U.S. at 412. In any event, qualified immunity normally protects *individuals* so they can "perform their public duties with[out] unwarranted timidity or be deterred from entering [a] line of work." *Filarsky*, 566 U.S. at 393 (discussing *Richardson*). It normally does not protect the government entities employing those individuals. *See Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017). As the creator and organizational executor of an official policy (i.e., the rate and fee structure), GTL stands in the shoes of a government entity, not an individual employee. Therefore, qualified immunity does not apply. *See id.*[5]

### 3. *Deceptive Conduct*

GTL argues that in light of several recent state and federal court decisions, this Court should reexamine its conclusion that CFA claims do not require deceptive conduct. GTL Br. at 32-33. But the cases GTL cites are easily distinguishable and do not squarely address the issue. Most notably, in a non-precedential opinion, the Third Circuit affirmed the dismissal of a CFA claim stemming from the sale of a "personal seat license." *Gengo v. Jets Stadium Dev. LLC*, 776 F. App'x 86, 86 (3d Cir. 2019). The plaintiff paid for the license because, at the time, it was the only way to purchase Jets season tickets in certain sections. *Id.* The defendants subsequently allowed fans to purchase similar tickets without a license. *Id.* In dismissing a CFA claim, the court found significant that the plaintiff "agreed that he was acquiring the license solely for the right to purchase tickets" and "[t]hat defendants might now sell adjacent seats to members of the general public does not implicate [plaintiff's] rights and certainly does not strip him of the benefit for which he bargained." *Gengo*, 776 F. App'x at 87. Thus, the plaintiff received exactly what he explicitly and freely contracted for—the right to purchase season tickets in specific seats. *See id.* As such, without deception, there was no wrongful practice alleged, which the CFA requires. *See* N.J.S.A. § 56:8-2. Accordingly, the only principle of New Jersey law cited was the oft-repeated phrase that "capacity to mislead is the prime ingredient" of a wrongful practice. *Id.* at 87-88 (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994); *Fenwick v. Kay Am. Jeep, Inc.*, 371 A.2d 13, 16 (N.J. 1977)). But just as rice flour has replaced wheat as the "prime ingredient" in gluten-free bread, alternative "ingredients" may fill in for deception under certain circumstances.[6] Here, unlike in *Gengo*, Plaintiffs did not receive benefits they *freely*

---

[4] Paragraph numbers of the Complaint appear out of order. The Court is referring to page 4 generally.

[5] Decisions denying qualified immunity are generally immediately appealable, *see Zimmerman v. Corbett*, 873 F.3d 414, 415 n.3 (3d Cir. 2017), but GTL waived its right to appeal, *see* GTL Ltr. (Jan. 23, 2020), ECF No. 218 ("GTL has not sought – and has no intention of seeking – an adjournment.").

[6] For example, a pharmacist drastically (but openly) increasing her prices when an ill customer expresses an immediate need for medication may not be deceptive, but likely would be unconscionable. A locksmith doubling her rate if she knows the stove is running inside a home may qualify too. As the Court previously held, "whether the rates and fees were so excessive [here] as to be 'unconscionable' . . .

5

bargained for.  Unfairly capitalizing on Plaintiffs' lack of choice for critical services may be "unconscionable," even without deception.  A jury will decide.

*Trento v. Flagstar Bank* similarly focused on deception, but the complaint in that case failed to specify *any* wrongful conduct by the CFA defendants.  *See* 2018 WL 4110956, at *4 (D.N.J. Aug. 29, 2018).  With respect to *Zirbser v. Wells Fargo Bank*, GTL selectively quotes part of one sentence of an opinion dismissing a CFA claim under FRCP 9(b) for failure to plead with particularity.  2019 WL 3244621, at *3-4 (D.N.J. July 19, 2019).  *Zirbser* did not rule— contrary to GTL's representation to the Court—that "conduct must be deceptive to violate the CFA."  GTL Br. at 32.  Unlike the pending matter, the defendants in *Zirbser* had no way of knowing the misconduct they were alleged to have committed, they were merely accused of charging "erroneous fees."  *Zirbser*, 2019 WL 3244621 at *3.  Thus, the court dismissed the claim under FRCP 9(b).  *See id.*

*Deutsche Bank National Trust Co. v. Merz* appears to support *Plaintiffs'* position.  2019 WL 4940213 (N.J. Super. Ct. App. Div. Oct. 8, 2019).  There, the Appellate Division found that "predatory lending may constitute an unconscionable commercial practice under the CFA."  *Id.* at *5 (cleaned up).  The court defined predatory lending to include use of "fraudulent, deceptive or *sharp* practices (often the elderly or minorities) to induce borrowers to enter into bad loans." *Id.* (emphasis added).  In other words, "sharp" practices could be unconscionable even without fraud or deception, especially when applied to potentially vulnerable consumers.

Finally, in *BJ America Electric v. BMW North America*, the Court found that unconscionable commercial practices required "fraudulent, deceptive *or other similar kind of selling or advertising practices*."  2019 WL 2028706, at *7 (N.J. Super. Ct. App. Div. May 8, 2019) (cleaned up and emphasis added).  Further, in analyzing whether the allegations constituted an "unconscionable" practice, the Appellate Division did not focus on potential "deception."  Rather, the court broadly analyzed each allegation for general unconscionability. *See id.* (finding there was "nothing unconscionable" about failing to respond to a letter when no obligation to do so existed, without mentioning potential deception).

For the foregoing reasons, GTL's motion to dismiss Plaintiffs' CFA claims is **DENIED**.

### C. Site Commissions as Costs

GTL argues that Plaintiffs' theory of liability under both the Takings Clause and the CFA fail because they rely on the premise that site commissions are not costs of providing ICS.  GTL Br. at 34-35.  Plaintiffs' disagree.  They argue that "GTL is free to argue at trial that the site commissions it paid were legitimate expenses, but that is a question for the jury to decide."  Opp. at 21.  In any event, Plaintiffs argue, the "calling rates and fees were still unconscionable even if site commissions are considered to be legitimate expenses."  *Id.* at n.12.

Plaintiffs are mostly correct.  As the court previously held, unlike in other cases challenging site commissions as *per se* unreasonable, "[h]ere, Plaintiffs claim that the specific commissions, together with specific ancillary fees, violated a state statute and the Takings Clause

---

is a question of fact that should be decided by a jury."  SJ Op. at 12.

of the Fifth Amendment. They do not argue that site commissions are *per se* unlawful." Class Cert. Op. at 16. Whether the specific fees and rates were unconscionable—and relatedly whether site commissions should be considered legitimate costs used to judge the potential excessiveness of those fees and rates—is for the jury to decide. *See* SJ Op. at *9.

Accordingly, GTL's motion to dismiss Plaintiffs' claims due to potentially legitimate cite-commission costs is **DENIED**.

### D. Waiver

The Court need not address whether Defendants waived any of the above-discussed defenses except that (1) they may be raised at trial and (2) GTL was entitled to challenge the sufficiency of Plaintiffs' claims via FRCP 12(c) motion. *See* FRCP 12(h)(2).

## IV. CONCLUSION

For the reasons set forth above, GTL's motion for judgment on the pleadings, or in the alternative, summary judgment, ECF Nos. 212-15, is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.

*/s/ William J. Martini*

**Date: March 2, 2020**  **WILLIAM J. MARTINI, U.S.D.J.**