## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BOBBIE JAMES,** *et al.* **on behalf of themselves and all others similarly situated,** | Docket No.: 2:13-cv-04989-WJM-MF |
| **Plaintiffs** | |
| **v.** | |
| **GLOBAL TEL*LINK CORP.,** *et al.*, | **OPINION** |
| **Defendants.** | |

### WILLIAM J. MARTINI, U.S.D.J.:

Plaintiffs bring this class action against Defendant Global Tel*Link and its subsidiaries (collectively, "GTL" or "Defendants") in connection with GTL's provision of inmate calling services ("ICS") to correctional facilities in New Jersey. Following multiple rounds of mediation and settlement conferences overseen by the Court, the parties have agreed on the terms of a settlement (the "Settlement"). ECF No. 250. The Court has previously granted preliminary approval of the Settlement, permitting the parties to notify Class members of the terms thereof. Now before the Court is Plaintiffs' motion to finally approve the Settlement (the "Motion"). ECF No. 252. For the reasons stated below, the Motion is **GRANTED** and the Settlement is finally **APPROVED**.

## I.   BACKGROUND

### A.   Factual Background and Procedural History

The facts and procedural history of this case were set forth in detail in the Court's opinions granting class certification, ECF No. 179 ("Class Cert. Opinion"), denying summary judgment, ECF No. 181 ("SJ Opinion"), and granting certain third parties the ability to appear as *amicus curiae* ("*Amicus* Opinion"), ECF No. 269, familiarity with which is assumed.

### B.   The Settlement

On May 28, 2020, the parties entered into, and sought preliminary approval of, the Settlement which would finally resolve all outstanding claims and issues in this case, and result in the voluntary dismissal, with prejudice, of this action.

Consistent with the Court's ruling in the Class Cert. Opinion, the Settlement defines the Class as:

> All persons of the United States, who, between 2006 and 2016, were incarcerated in a New Jersey prison or correctional institution and who used

the phone system provided by Defendants, or who established an AdvancePay account with Defendants in order to receive telephone calls from a person incarcerated in New Jersey, excluding Essex County prior to June 2010, or persons receiving calls from persons incarcerated in Essex County prior to June 2011.[1]

Settlement § 1(e) (defining the "Class"). The Class is entitled to receive up to $25 million in cash and credits from GTL in total compensation, allocated among Class Members in accordance with the Plan of Allocation. *Id.* § 8.

The Plan of Allocation provides for the following distributions for Class Members:

- For Calls made between January 1, 2006 and December 31, 2008, 20% of the total amount spent for calling time above $.05 per minute;
- For Calls made between January 1, 2009 and December 31, 2011, 15% of the total amount spent for calling time above $.05 per minute;
- For Calls made between January 1, 20012 and December 31, 2016, 10% of the total amount spent for calling time above $.05 per minute.

*Id.* § 14(a). Each of these Settlement Payments will be based on the total spending for each account as shown on GTL's calling records and shall be subject to a maximum recovery of $5,000 per account. *Id.* §§ 14(b)-(c). The form of consideration will vary depending on each Class Member's status as a former or current GTL customer. Former customers will receive cash payments upon the submission of a Claim Form verifying their identity and entitlement to such Settlement Payments; current GTL customers will receive a credit into their AdvancePay accounts equal to the amount of their claim, without the need to submit any proof of claim. *Id.* §§ 14(d)-(e). In the event the total amount of Allowed Claims exceeds the $25 million settlement amount, each Settlement Payment will be subject to a pro-rata reduction until the total payments equal $25 million. *Id.* § 14(g).

In exchange for the Settlement Payments, Class Members shall release the "Released Parties," including GTL, of liability for all "Released Claims." *Id.* § 16(a). In turn, the Settlement defines "Released Claims" as:

[A]ny an all claims that were brought or could have been brought in the Action relating to the provision of Defendants' services for calls originating from prisons, jails or other correctional institutions in New Jersey during the Class Period, including without limitation the rates or fees for or related to such services.

---

[1] The Settlement also excludes the following from the Class: 1) any Class Members who timely and validly elect to be excluded from the Class in accordance with the Preliminary Approval Order; 2) any Class Members who previously excluded themselves from the Class; 3) any GTL customer who set up payment by direct bill; and 4) Defendants and their respective parents, subsidiaries, and affiliates.

*Id.* § 1(u). Class Members reserved the right to opt-out or object to the Settlement. *Id.* §§ 10-12.

On July 15, 2020, this Court preliminarily approved the Settlement, ECF No. 251 ("Preliminary Approval Order"), finding that the Settlement "resulted from arm's-length negotiations between highly experienced counsel and falls within the range of possible approval" and "raises no obvious reasons to doubt its fairness and raises a reasonable basis for presuming that it satisfies the requirements under Fed.R.Civ.P. 23 and due process." Preliminary Approval Order ¶ 1. The Preliminary Approval Order scheduled a hearing on final approval of the Settlement (the "Fairness Hearing") for October 15, 2020, and set the deadline for any objections to the Settlement for September 21, 2020. Only five Class Members sought to be excluded from the Settlement.[2] No objections to the Settlement were filed by any Class Members.

On September 21, 2020, plaintiffs in a separate putative class action pending in the United States District Court for the Northern District of Georgia sought to intervene, or, in the alternative, appear as *amicus curiae* in order to file a "conditional objection" to the Settlement (the "Conditional Objection"). ECF No. 255-1. In the *Amicus* Opinion, the Court granted the proposed intervenors leave to appear as *amicus curiae* for the purpose of objecting to the Settlement and appearing at the Fairness Hearing.

The Court now decides the instant Motion to approve the Settlement on a final basis. Having considered each of the motions and papers attached thereto, the terms of the Settlement itself, and the Conditional Objection, and having held a Fairness Hearing to evaluate the terms of the Settlement, the Court finds that the Settlement is fair, reasonable, and adequate.

## II.      DISCUSSION

Plaintiffs ask this Court to (1) find that the notice given to Class Members of the Settlement was adequate; (2) approve the Settlement as fair, reasonable, and adequate; and (3) approve the award of attorneys' fees, expenses, and related costs. The Court will address each request in turn.

### A. Adequacy of Notice

Before approving the settlement of a class action, the Court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In order to satisfy this notice requirement, notice of the settlement provided to Class Members must contain the information required by FRCP 23(c)(2) and must be made in a form and manner that satisfies the requirements of due process. *Shapiro v. Alliance MMA, Inc.*, No. 17-2583 (RBK/AMD), 2018 WL 3158812, at \*7 (D.N.J. June 28, 2018). FRCP 23(c)(2) provides that notice to Class Members must be the best that is

---

[2]Those Class Members are: (1) Jane Bruno; (2) Bruni Nicholas; (3) Marianela Maldonado; (4) Joanna Salgado; and (5) Aakask Dalal.

"practicable under the circumstances" and must "clearly and concisely state in plain, easily understood language":

> (i) the nature of the action;

> (ii) the definition of the class certified;

> (iii) the class claims, issues, or defenses;

> (iv) that a class member may enter an appearance through an attorney if the member so desires;

> (v) that the court will exclude from the class any member who requests exclusion;

> (vi) the time and manner for requesting exclusion; and

> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. Pro. 23(c)(2). In addition, in the context of a settlement, due process requires that Class Members be notified "(1) of the nature of the pending litigation, (2) of the settlement's general terms, (3) that complete information is available from the court files, and (4) that any class member may appear and be heard at the Fairness Hearing." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997).

Here, the notice provided to Class Members satisfies the requirements of FRCP 23 and due process. The notice described, in detail, (1) the nature of the Action and the legal and factual bases for the claims pursued therein, the definition of the certified class, (2) the key terms of the Settlement, including the settlement amount, the process for each Class Member to receive Settlement Payments, and the release of claims against GTL, (3) the binding nature of the Settlement on each Class Member, (4) the rights of each Class Member to retain separate legal counsel, object to the Settlement, opt-out of the Class, or appear at the Fairness Hearing, as well as the deadlines by which to do so, and (5) where to find additional information about the Action and the proposed Settlement. *See* Giannotti Decl., Ex. A., ECF No. 252-8. Accordingly, the Court finds that the notice provided to Class Members "contain[ed] sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013).

Likewise, the Court finds that the manner in which Class Members were notified comports with the requirements of FRCP 23 and due process. Email notice was successfully delivered to 473,960 valid email addresses, and postal notice was made to over 39,722 mailing addresses on the Settlement Class List. Giannotti Decl., ¶¶ 4-9. Notice of the Settlement was posted on the website that was established and maintained after the Class was certified, which has had 13,384 unique visitors resulting in approximately 3,835-page views. *Id.* ¶ 13. Moreover, notice of the Settlement was printed in the *Prison Legal Times* on both August 1,

2020 and September 1, 2020, as well as in both the *Newark Star Ledger* and *South Jersey Times* on August 11, 2020 and August 18, 2020. *Id.* ¶ 10. Finally, notice of the Settlement, and responses to frequently asked questions with respect thereto, was available via a toll-free hotline that allowed Class Members the opportunity to arrange a callback from a live operator. *Id.* ¶ 11-12.

Based on the foregoing, the Court concludes that the manner in which notice was provided to Class Members was the best practicable under the circumstances and satisfies the requirements of FRCP 23 and due process.

## B. Approval of the Settlement

FRCP 23(e) requires court approval of any proposed settlement of a class action. Fed. R. Civ. P. 23(e). In determining whether to approve the Settlement, the Court notes two important, yet competing, points. First, the law encourages and favors the settlement of civil actions in federal court, particularly so in complex class actions. *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* (*"General Motors"* ), 55 F.3d 768, 784 (3d Cir.1995); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("*Warfarin*") ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). However, notwithstanding the general presumption in favor of settlement, in the class action context, the Court "acts as a fiduciary who must serve as a guardian of the rights of absent class members." *General Motors*, 55 F.3d at 785 (citations and quotations omitted). In balancing these interests and objectives, the key inquiry is whether the proposed settlement is "fair, reasonable, and adequate." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions,* ("*Prudential I*"), 148 F.3d 283, 316 (3d Cir.1998). Whether to approve a settlement as fair, reasonable, and adequate is committed to the sound discretion of the Court. *Id.* at 299.

The Third Circuit has identified nine factors for the Court to consider in determining whether the Settlement is fair, reasonable, and adequate: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Girsh v. Jepson,* 531 F.2d 153, 157 (3d Cir.1975). Beyond these nine factors, the Third Circuit has also identified additional factors the Court may consider when appropriate and relevant, including: the maturity of the underlying substantive issues; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential I,* 148 F.3d at 323.[3] "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Am. Family Enters.,* 256 B.R. 377, 418 (D.N.J. 2000) (quotations omitted). Instead, the Court "must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under *Girsh.*" *In re Valeant Pharms. Int'l Inc. Sec. Litig.*, No. 3:15-CV-07658-MAS-LHG, 2020 WL 3166456, at *7 (D.N.J. June 15, 2020) ("*Valeant*"). The Court addresses each *Girsh* factor, and, where appropriate, *Prudential* factor, in turn.

### 1. The complexity, expense and likely duration of the litigation

Analysis of the first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 437 (3d Cir. 2016) ("*NFL Players Litig.*"). Here, the costs, complexity and likely duration of this case strongly favor settlement. This case is already seven years old and has gone through two trips to the Third Circuit. Although the case was on the eve of trial when the Settlement was announced, the time and expense of a complex class action trial is substantial, and would very likely lead to post-trial motions and subsequent appeals that could extend this case for several more years. Indeed, at the time the Settlement was announced, a number of pre-trial motions, including a motion to decertify the Class, were pending and would have required resolution by this Court before the trial could take place. Finally, the Court cannot ignore the exigent circumstances posed by the COVID-19 pandemic, which has considerably slowed the progress of litigation and has forced courts in this district to reschedule trials or organize virtual hearings where practicable until it is safe to resume such activities in person.

### 2. The reaction of the class to the settlement

"The second *Girsh* factor 'attempts to gauge whether members of the class support the settlement.'" *Warfarin,* 391 F.3d at 536 (quoting *Prudential I,* 148 F.3d at 318). Here, Plaintiffs state that the notice records indicate that, for the relevant ten-year class period, there are over 500,000 Class Members. Mot. at 8; Giannotti Decl. ¶¶ 4-9. Of those Class Members, none filed any objection to the Settlement, and only five sought to be excluded therefrom by opting-out. The absence of any objections by Class Members, and the exceedingly small number of opt-outs relative to the apparent size of the Class, strongly weighs in favor of approval of the Settlement. *See, e.g., NFL Players Litig.,* 821 F.3d at 438; *Little-King v. Hayt Hayt & Landau*, No. 11-5621 (MAH), 2013 WL 4874349, at *21 (D.N.J. Sept. 10, 2013) (collecting cases).

---

[3] Rule 23(e)(2) was amended in 2018 to include a list of factors for courts to consider in evaluating a proposed settlement of a class action. The Third Circuit has, however, continued to apply the *Girsh* and *Prudential* factors. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 329 (3d Cir. 2019). Accordingly, this Court likewise focuses its analysis on the appropriate *Girsh* and *Prudential* factors.

### 3.  The stage of the proceedings and the amount of discovery completed

The third *Girsh* factor "captures the degree of case development that class counsel have accomplished prior to the settlement. Through this lens, courts can determine whether class counsel had an adequate appreciation of the merits of this case before negotiating." *In re Cendant Corp. Litig.,* 264 F.3d 201, 235 (3d Cir. 2001) (quotations omitted). Here, this factor undoubtedly favors approval of the Settlement. As noted above, this case has been pending and actively litigated both before this Court and in the Third Circuit for seven years. The parties have litigated motions to dismiss, to certify (and decertify) the class, summary judgment, judgment on the pleadings, and to compel arbitration. In addition, the parties have completed discovery and have had ample opportunity to develop thoughtful and thorough evaluations of the relative strengths and weaknesses of their claims or defenses. Finally, prior to reaching agreement on the terms of the Settlement, the parties have engaged in multiple rounds of mediation with a Court-appointed mediator, and in multiple settlement conferences lead by the Court.

### 4.  The risks of establishing liability and damages

Together, the fourth and fifth *Girsh* factors "survey the potential risks and rewards of proceeding to litigation in order to weigh the likelihood of success against the benefit of an immediate settlement." *Warfarin,* 391 F.3d at 537. In other words, the Court must consider "what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." *General Motors,* 55 F.3d at 814.

Here, as the Court noted in the Class Cert. Opinion, Plaintiffs' expert had preliminarily concluded that the total value of Plaintiffs' claims was "roughly $150 million." Class Cert. Op. at 12. However, by the time the Settlement was reached, only one of the two certified claims remained: Plaintiffs' CFA claim alleging GTL engaged in unconscionable business practices. This claim was subject to certain defenses, including GTL's argument that it was entitled to share in the government's absolute immunity to a CFA claim through the application of "derivative immunity." In addition, as GTL points out, Plaintiffs' expert was subject to a pending *Daubert* motion. Finally, as noted above, GTL had already moved to decertify the Class, and there was no guarantee that Plaintiffs would have been able to continue to prosecute this case as a Class Action.

Beyond these technical points, however, is an obvious one: there is no guarantee that Plaintiffs would have been successful in convincing a jury to hold GTL liable. Plaintiffs' lone remaining claim and legal theory under the CFA for unconscionable business practices would have required Plaintiffs to establish that the fees and other charges levied by GTL were unconscionable within the meaning of the CFA. While Plaintiffs certainly may have been successful in establishing such liability at trial, the Court cannot conclude that such a result was likely with any reasonable certainty. Accordingly, this factor also weighs in favor of approving the Settlement.

### 5.   The risks of maintaining the class action through the trial

The sixth *Girsh* factor "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *Warfarin*, 391 F.3d at 537 (citations omitted). Although this factor is ordinarily entitled to minimal weight, the Court finds that the pending motion to decertify or otherwise narrow the Class tilts this factor, however slightly, towards supporting the Settlement.

### 6.   The ability of the defendants to withstand a greater judgment

Neither party has suggested that the Settlement Amount was in any way related to GTL's professed inability to pay. Thus, this factor is not relevant to the Court's analysis.

### 7.   The range of reasonableness of the settlement fund in light of the best possible recovery and all attendant risks of litigation

The eighth and ninth *Girsh* factors analyze "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.*

Here, the Settlement provides immediate relief to Class Members of up to $25 million. For the most vulnerable members of the Class, those currently incarcerated and paying for GTL's services, the Settlement would provide immediate relief in the form of a credit on such Class Members' AdvancePay accounts that could be used to pay for continued communication with such Class Members' friends and family without the need to submit a proof of claim form. For former GTL customers, upon the submission of a proof of claim form and verification of the information contained therein, such Class Members will receive direct cash payments. These immediate, or near immediate, benefits are substantial and, particularly for current GTL customers, are arguably more valuable than theoretically higher cash payouts that might not arrive until after a final judgment is rendered and appellate options are exhausted.

In addition, as noted above, if (1) the Court denied GTL's pending decertification motion; (2) the Plaintiffs' expert survived GTL's *Daubert* challenge, (3) Plaintiffs' successfully convinced a jury that GTL's fees and charges were unconscionable business practices under the CFA, and (4) Defendants failed to establish that they were entitled to immunity, Plaintiffs may have been entitled to very substantial recovery – perhaps up to $150 million. However, the pending motions to decertify the class and to challenge the reliability of Plaintiffs' damages expert, as well as the availability of a potential immunity defense created a not insignificant risk that Plaintiffs could have recovered nothing at all, or that some portion of the Class may have been forced to arbitrate their claims rather than participate in the class action.

In light of these risks, and the certainty of the benefits provided by the Settlement, the Court concludes that these factors weigh in favor of approving the Settlement.

### 8. The *Prudential* Factors

In addition to the *Girsh* factors, the Court also finds that consideration of the relevant *Prudential* factors also weighs in favor of approving the Settlement. First, Class Counsel has had seven years to evaluate the substance of the claims asserted in the Complaint and certified by this Court and was able to make an informed decision about the appropriate settlement value of such claims. Moreover, while the Court is unaware of similar "unconscionability" claims under the CFA as it relates to telephone fees and charges, the Court cannot say that this case raises such a novel or complex legal issue that the Court cannot reasonably evaluate the fairness of the proposed Settlement. The Settlement provided ample opportunity for Class Members to object thereto or opt-out from the Class, along with clear instructions for how to do so. The procedures for processing individual claims are entirely fair and reasonable, requiring nothing from current GTL customers and only the submission and verification of a proof of claim form for former GTL customers. Finally, as explained in more detail below, the Court finds that the attorneys' fees requested are also fair and reasonable. *See infra* Section II.C.

### 9. *Amicus'* Objection

*Amicus* "conditionally object" to the Settlement on a number of grounds. The Court has carefully reviewed *Amicus*' objection and the pleadings related thereto and concludes that the objection is without merit.

At the outset, the Court notes that the issues raised in the Conditional Objection are, as the name suggests, conditional. As *Amicus* freely admit, the arguments raised in the Conditional Objection only matter *if* the Court determines that the release provisions in the Settlement encompass certain "inactivity" claims that are at the heart of a putative nationwide class action pending in the United States District Court for the Northern District of Georgia (the "*Githieya* Action"). In essence, *Amicus* asks the Court to rule on the preclusive effect of the release in the Settlement on a specific set of claims that may come before the court in the *Githieya* Action. This, however, the Court is not in a position to do.

This threshold determination would require the Court to engage in a far-reaching analysis of hypothetical issues that are not properly before it. At present, although a motion for class certification is pending in the *Githieya* Action, no class has been certified and no claims have been certified for class adjudication. It is thus entirely speculative whether the scope of the release in the Settlement would foreclose any class claims asserted therein. Moreover, *Amicus* and both GTL and the Plaintiffs appear to agree that any effect the release in this case has on the claims that may eventually be litigated in the *Githieya* Action is a question for the *Githieya* court to ultimately decide, and for good reason: it would be wholly inappropriate for this Court to prejudge the merits of claims or defenses pending in another action before another court, and the Court refuses to do so here.

Instead, the Court is tasked with ensuring that the release, as with all of the Settlement's key terms, is fair, reasonable, and adequate in light of the nature of the case and the issues that are properly before it. "[A] judgment pursuant to a class settlement can

bar later claims based on the allegations underlying the claims in the settled class action." *In re Prudential Ins. Co. of Am. Sales Practice Litig. (Prudential II)*, 261 F.3d 355, 366 (3d Cir. 2001). Courts in this district have long recognized that class action settlements may release "all claims that arise out of the same course of conduct alleged in the Complaint." *Varacallo v. Mass. Mut. Life. Ins. Co.*, 226 F.R.D. 207, 244 (D.N.J. 2005) (collecting cases). The Third Circuit has repeatedly noted that this rule "serves the important policy interest of judicial economy by permitting parties to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action." *Prudential II*, 261 F.3d at 366; *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 494 (3d Cir. 2017).

The release at issue here clearly satisfies this standard and is appropriate in light of the circumstances of this case. Section 16 of the Settlement provides, in relevant part, "[i]n consideration of this Agreement and the benefits extended to the Class, Class Plaintiffs, on behalf of themselves and the Class Members, and each Class Member . . . fully release and forever discharge the Released Parties from the Released Claims." Settlement § 16(a). In turn, as noted above, the Settlement defines the "Released Claims" as:

> [A]ny an all claims that were brought or could have been brought in the Action relating to the provision of Defendants' services for calls originating from prisons, jails or other correctional institutions in New Jersey during the Class Period, including without limitation the rates or fees for or related to such services.

*Id.* § 1(u). The notice of the Settlement provided to Class Members accurately described in detail the nature of the release and the rights of Class Members to opt-out of the Settlement to avoid being bound thereby. Giannotti Decl., Ex. A.

Ultimately, Class Counsel made an informed decision as to which claims to pursue in this litigation, and only one of those claims was certified by the Court for class adjudication and remains pending. Class Counsel is experienced in similar class action litigation and has lived with and worked extensively on this specific case for seven years. In short, the Court will not second guess Class Counsel's evaluation of the claims against GTL or their litigation strategies in determining which claims to pursue or settle, and because Class Members were adequately notified of the consequences of the Settlement and the release, the Court concludes that the release is fair, reasonable, and adequate.

Notwithstanding the above determination, however, the Court wishes to be clear on what it is *not* holding. The Court does not hold that the release does or does not apply to the "inactivity" claims at issue in the *Githieya* Action. Therefore, the Court has not ruled on whether such "inactivity claims" concern the provision of GTL's services, relate to the conduct alleged in the Complaint, or were or could have been brought in this Action. These questions, as the parties themselves admit, are for the *Githieya* court to answer at the appropriate time based on that court's understanding of the precise nature of the claims asserted therein.

## C. Attorneys' Fees

Class Counsel requests an award of attorneys' fees and expenses in the amount of $8,332,500 to be paid by GTL, in addition to, and separate from, the up to $25 million payable to Class Members through the Settlement. Pursuant to Rule 23(h), the Court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Although the decision to award attorneys' fees and expenses is within the Court's discretion, the Court must carefully review the negotiated award to ensure that it is fair, reasonable, and adequate. *Little-King*, 2013 WL 4874349, at *18; *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005). In evaluating an award of attorneys' fees, courts typically apply one of two methodologies: (1) the lodestar method in which the number of hours worked by Class Counsel is multiplied by a reasonable hourly billing rate for such services; or (2) the percentage-of-recovery method in which Class Counsel is awarded a certain percentage of the Settlement Amount. *In re AT&T Corp., Sec. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006). Where, as here, the Settlement provides for the payment of attorneys' fees from the same source as the pool of Settlement funds available to Class Members – here, GTL – the arrangement "is, for practical purposes, a constructive common fund" that is best analyzed using the percentage-of-recovery methodology. *See Dewy v. Volkswagen AG*, 558 F. App'x 191, 197 (3d Cir. 2014); *see also General Motors*, 55 F.3d at 820-21.

### 1. Percentage of Recovery Analysis

In determining whether a fee award is reasonable under the percentage-of-recovery analysis, the Third Circuit has identified a number of factors for the Court to consider: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). In addition to these seven factors, the Third Circuit has identified three additional factors for the Court to consider: (8) the value of benefits attributable to efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement. *In re Diet Drugs (Phentermine/Flenfuramine/Dexflenfuramine) Prods. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009).

Several of these factors overlap considerably with those considered by the Court in approving the Settlement itself as fair, reasonable, and adequate. For example, the Court has already determined that the duration and complexity of this case (factor 4) were both substantial: the case, which concerned the rights of thousands of Class Members and raised complex questions under state and federal law, has been pending for seven years, gone through two separate appeals to the Third Circuit, and faced the likely prospect of a third

11

appeal upon the conclusion of the upcoming trial. *See Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, No. 08-235, 2019 WL 4877563, at *6 (D.N.J. Oct. 3, 2019). Similarly, the Court has already noted the lack of any objections to the Settlement (factor 2), notice of which included specific information about the fees requested by Class Counsel. *Id.*; *see also Valeant*, 2020 WL 3166456, at *12. Finally, the Court has already extensively analyzed the risk of nonpayment (factor 5) by noting the various risks, including the risk of an unsuccessful trial or appeal, that would render Plaintiffs, and – because Class Counsel has represented Plaintiffs on a wholly contingent basis – therefore Class Counsel, unable to recover anything at all. *In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-CV-285 (DMC), 2010 WL 547613, at *11 (D.N.J. Feb. 9, 2010) ("*Merck"*). Accordingly, as with the Settlement, each of these factors weighs strongly in favor of approving the award of attorneys' fees and expenses.

The remaining factors also support the award of attorneys' fees and expenses. With respect to the first factor, the $25 million Settlement Amount is a substantial recovery for Class Members, and provides both immediate relief to the estimated 55,000 currently incarcerated GTL customers as well as direct cash payments to potentially hundreds of thousands of former GTL customers who submit a valid claim. This factor therefore supports the requested award.

Likewise, the third factor unquestionably supports approving the requested fee award. This factor measures the "quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *Valeant*, 2020 WL 3166456, at *12 (quotations omitted). Here, as noted, the $25 million recovery for Class Members is substantial and immediate, particularly in light of the length of this case, the complex issues involved, and the zealous advocacy on both sides. Moreover, both Class Counsel and counsel for the Defendants are highly experienced, reputable firms who are no strangers to complex class actions and civil litigation.

The sixth factor weighs in favor of approving the requested fee award. Over the course of seven years of complex litigation, Class Counsel devoted a combined 7,627.9 hours to this case. Cecchi Decl. ¶¶ 9, 13; Plaisted Decl. ¶ 8. Class Counsel devoted substantial time litigating multiple motions to dismiss, motions for summary judgment, a motion to compel arbitration, a motion for class certification, appeals to the Third Circuit, multiple rounds of mediation, extensive discovery, and substantial pre-trial preparation. Cecchi Decl. ¶ 2; Plaisted Decl. ¶¶ 3-6.

In evaluating the reasonableness of a requested fee award, the seventh factor requires the Court to compare the requested award to those approved in similar cases. The Third Circuit has found that, in common fund cases such as this one in which the percentage-of-recovery methodology is used, the fees typically awarded to class counsel generally range between 19% to 45% of the settlement fund. *General Motors*, 55 F.3d at 822. Here, the total requested award of fees and expenses of $8,332,500 is exactly 33.33%

of the Settlement Amount and represents 25% of the aggregate amount of the constructive common fund. Subtracting unreimbursed expenses of $619,793.14, the requested attorneys' fee comprise 30.5% of the Settlement Amount and 23% of the aggregate constructive common fund. Thus, by any measure, the requested award of attorneys' fees and expenses is well within the reasonable range of awards approved by the Third Circuit, and is consistent with similar class action settlements. *Compare In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 155 (D.N.J. 2013) (approving fee award equal to 33.33% of $10.5 million settlement); *Merck*, 2010 WL 547613, at *11 (approving fees equal to 33.33% of $41.5 million settlement fund); *Milliron v. T-Mobile USA, Inc.*, No. 08-4149, 2009 WL 3345762, at *14 (D.N.J. Sept. 10, 2009) (approving fees equal to 33.33% of $13.5 million settlement fund). Accordingly, this factor also supports approval of the requested fee award.

The eighth factor, which considers the value of the benefits obtained by the class that are fairly attributable to the efforts of class counsel relative to outside groups, such as government agencies, also weighs in favor of approving the requested award for attorneys' fees and expenses. Although there was separate litigation concerning FCC regulations relating to excess prison telephone rates and fees, the surviving claims in this case were independent of that litigation and not dependent on the efforts of anyone other than Class Counsel. *See Valeant*, 2020 WL 3166456, at *14.

The requested award of fees and expenses relative to the size of the recovery and constructive common fund is also in line with contingent fees that are routinely negotiated in the private marketplace. *Merck*, 2010 WL 547613, at *12 (citing cases). As such, the ninth factor also supports approval of the requested award.

The final factor asks the Court to consider any innovative terms of the Settlement. While perhaps not innovative, the Settlements ability to provide immediate relief to the most vulnerable Class Members in the form of credits to their respective AdvancePay accounts without the need to file a proof of claim, is significant and goes beyond simple cash payments to Class Members. Accordingly, the Court concludes that this factor also weighs in favor of approving the requested award of fees and expenses.

### 2. Lodestar Cross-Check

The Third Circuit has encouraged courts in this District to "cross-check" the reasonableness of percentage fee awards against the lodestar method. *See Rite Aid Corp. Sec. Litig.*, 396 F.3d at 305-06. Here, the total lodestar amount for Class Counsel is $5,410,603.07.[4] Cecchi Decl. ¶ 9, 13, 14; Plaisted Decl. ¶ 8. Subtracting the portion of the $8,332,500 award comprised of unreimbursed expenses, this results in a lodestar multiplier of 1.43, well within the reasonable range approved by the Third Circuit and courts in this District. *See Prudential I*, 148 F.3d at 341 ("Multiples ranging from one to four are

---

[4] In the Motion, Class Counsel list this figure as $5,112, 355.57. The Court, upon review of the submissions and statements made in the accompanying declarations of Class Counsel, believes $5,410,603.07 is the accurate lodestar.

frequently awarded in common fund cases when the lodestar method is applied." (quotations omitted)). The Court thus concludes that the requested fee award is also reasonable under the lodestar method.

### 3. Expenses

As part of the $8,332,500 fee award, the Class Counsel requests payment of $619,791.14 in unreimbursed expenses. Class Counsel is "entitled to reimbursement of expenses that were adequately documents and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001). Here, Class Counsel has produced an itemized list of expenditures and has certified that detailed records with respect thereto are maintained by and reflected in the respective firms' books and records. Cecchi Decl. ¶¶ 11-12; Plaisted Decl. ¶¶ 10-11. In addition, the Court concludes that the expenditures for which Class Counsel seek reimbursement, such as expert or consultant fees, computer research, and travel, "are the type of expenses routinely charged to hourly paying clients and, therefore, should be reimbursed out of the common fund." *In re Ocean Power Techs., Inc.*, No. 3:14-CV-3799, 2016 WL 6778218, at *29 (D.N.J. Nov. 15, 2016). Accordingly, Class Counsel's request for reimbursement of $619,791.14 in expenses is approved.

### 4. Case Contributions to Representative Plaintiffs

Finally, Class Counsel requests approval of $15,000 awards to each of the four Class Representatives. The Court finds the requested case contribution awards to be fair and reasonable. Class Representatives provided the information necessary to file the Complaint, produced documents and sat for depositions, and have adequately represented the Class for over seven years. Accordingly, the Court will approve case contribution awards of $15,000 for each of the four named Class Representatives.

## III.   CONCLUSION

For the reasons stated above, Plaintiffs' motion is **GRANTED**, and the Settlement, request for attorneys' fees and expenses and case contribution awards is **APPROVED**.


                    /s/ William J. Martini
                **WILLIAM J. MARTINI, U.S.D.J.**


**Date: October 20, 2020**

14